## BULLOCK  *v.*  JOHNSON.

1. The parties to a written contract have the power to reform it, so as to correct a mutual mistake in reference thereto, without any new consideration passing between them, whether the mistake was as to the legal effect of the writing as it originally stood, or was caused by the accidental omission of words which they intended it to contain.

2. Where one " carrying on the business of a produce dealer in the city of Macon," and " running peddling wagons in said city and the suburbs thereof," from which he sold produce, sold out the property employed by him in such business and its good-will to another, and, in consideration of the purchase of the same by the latter, agreed and bound himself " not to enter into, or connect himself in any manner whatsoever in the produce business in the county of Bibb for the period of five years from the date of this agreement, without the consent and knowledge of the [other] party," the contract, as a restraint upon trade, was not, under the general provisions of the law, unreasonable, and a violation of its terms could be prevented by injunction, if necessary.

3. There is in the present bill of exceptions no assignment of error which presents for determination here the question whether or not the provisions of the act approved December 23, 1896, declaring unlawful certain " arrangements, contracts, agreements, trusts," etc., would be applicable to a contract such as the one above indicated.

Argued March 6 — Decided April 9, 1900.

Equitable petition. Before Judge Felton. Bibb superior court. May 10, 1899.

*John R. L. Smith,* for plaintiff in error.

*John L. Hardeman,* contra.

FISH, J. Johnson brought his action in the superior court of Bibb county, in which he sought to enjoin Bullock "from carrying on the business of a produce dealer in any manner in the county of Bibb prior to the 7th day of March, 1903." His action was founded upon the following alleged written contract between the parties, which he averred the defendant, without his consent, had repeatedly and continuously violated:

"State of Georgia, County of Bibb. Memorandum of agreement made and entered into this the 7th day of March, 1898, by and between W. B. Bullock, of the first part, and N. B. Johnson, of the second part, both in the city of Macon, Bibb county, Ga., witnesseth, that the party of the first part hereby agrees to sell to the party of the second part, one (1) mule, one (1) horse, two (2) spring wagons, two (2) sets of single harness and two sets of city peddler's license for the year 1898, and the good will of his produce business which the said party of the first part is engaged in on Walnut street between First and New streets in the city of Macon, Bibb county, Georgia, for which the party of the first ( ?) part hereby agrees to pay to the said party of the first part the sum of one hundred and thirty-six dollars ($136.00) upon the signing of this agreement. In further consideration of the purchase of the above-named articles and business from the party of the first part by the party of the second part, the party of the first part hereby agrees and binds himself not to enter into, or connect himself in any manner whatsoever in the produce business in the county of Bibb for the period of five years from the date of this agreement, without the consent and knowledge of the party of the second part. In witness whereof, the parties hereto have signed this agreement in duplicate this the day and year first above written. N. B. Johnson, (L.S.).

"Witness: F. C. Moseley, J. M. Wright, W. B. Bullock."

"Macon, Ga., March 7th, 1898. Received of N. B. Johnson $136.00 in full payment of the above named property. $136.00.
W. B. Bullock."

Upon the trial of the case in the superior court, at the close of the plaintiff's testimony the defendant moved the court "to grant a nonsuit in said case and to dismiss the same." This motion was overruled by the court. The jury returned a verdict finding for the plaintiff, and that the defendant be enjoined as prayed; a decree was entered accordingly, and the defendant excepted, assigning as error the overruling of his motion for a nonsuit. Having elected to rest his case upon the strength of his motion to nonsuit, the defendant must stand or fall upon the facts of the case as made by the plaintiff's evidence and the admissions contained in the defendant's answer. It was alleged by the plaintiff and admitted by the defendant "that, prior to the 7th day of March, 1898," the defendant "was carrying on the business of a produce dealer in the City of Macon," which business, according to the defendant's answer, "consisted entirely in running peddling wagons in said city and the suburbs thereof, from which [the] defendant peddled produce." On the above-mentioned date the written contract set up in the plaintiff's petition, minus the words, "in the county of Bibb," was executed by the parties. The plaintiff testified: "Mr. Bullock wrote the words, 'in the county of Bibb,' in the contract, the basis of this suit, in his own handwriting. Those words were not in the original contract as signed on March 7th, 1898. They were inserted some time afterwards. I do not remember exactly how long afterwards — a month or two, I think. I heard that Bullock was running a peddling-wagon, from which he was peddling produce, and that he claimed there was some flaw by which he could get around the contract. I made inquiry and was informed that the contract was not binding. I went to see Bullock and asked him to insert the words, 'in the county of Bibb,' in the contract, and he did so. I did not pay him any money for inserting those words, nor did I give him any property or thing for doing so. Those words were inserted at his grocery-store on Cotton avenue, in Macon, Ga. I had the original contract prepared for Bullock to sign. Mr. Block wrote it for me. I presented it to Bullock for his signature when he came to deliver the property and when I paid him the $136.00. My object in buying out Bullock was to get him out of the busi-

ness and out of competition with me. The understanding was that Bullock was not to engage in business further in Bibb county after this contract, unless by consent of Johnson. He said he expected to go to Savannah and engage in business. I am not in the produce business now. Have not been since about last January. I had to go out of the business because I could not compete with Bullock. I do not know anything of my own knowledge about Bullock having connected himself in any manner with the produce business, since we made the contract." Question by the court: "Did you intend that those words, 'in the county of Bibb,' should be in the contract when it was originally signed, or was that merely an afterthought?" Answer: "That was merely an afterthought."· Question by plaintiff's counsel: "You say your object in buying out Bullock was to get him out of competition?" Answer: "Yes, sir." Q. "Then inserting those words was not an afterthought, was it?" A. "No, sir." A witness named Bowman testified: "I worked for Mr. Bullock last year. I drove a peddling-wagon for him, from which I peddled chickens, eggs, etc. That was some time about planting time." Another witness testified: "I bought some chickens from Mr. Bullock last year some time during the summer, and he told me not to tell Mr. Johnson anything about it. I bought the chickens from his grocery-store on Cotton avenue, and I sold them at the market." The written contract, as above set forth, was introduced in evidence. The motion for a nonsuit attacked the contract, as originally executed, upon the ground that "it was in general restraint of trade, and therefore against public policy"; and alleged that "inasmuch as said contract was void for the reason above stated, without the words, 'in the county of Bibb,' being therein, and inasmuch as there was no consideration for the making of a new contract by inserting said words in said original contract, said contract, with said words so inserted, was still void for want of consideration."

1. The contract as originally executed, being unlimited as to territory in which Bullock was restrained from carrying on the produce business, was in general restraint of trade, and therefore void. But was the court, in the light of the plaintiff's testimony, bound, upon a motion for a nonsuit, to ignore the words,

"in the county of Bibb," which appeared in the written instrument, and deal with it as if they were not there? If at the time the parties entered into the contract there was no intention to prohibit Bullock from carrying on the produce business outside of Bibb county, but the understanding was simply that, for five years, he "was not to engage in the business further in Bibb county, . . unless by the consent of Johnson," and by mistake or inadvertence the words, "in the county of Bibb," were left out of the writing, it is perfectly clear that when these words were afterwards, by consent of the parties, inserted in the instrument, they were as much a part of the original contract and as binding upon Bullock as they would have been if they had been written therein before the parties signed it. Under such circumstances, no new consideration would be necessary to support the insertion of such words into the writing, as they would rest upon the original consideration. This would be true even if the insertion of these particular words was a mere afterthought, if they were necessary to set forth the true agreement intended by the parties, who had been mutually mistaken in believing that the instrument, as executed, really did correctly and legally express their agreement. The parties to the contract certainly had the power to reform the written contract, so as to correct a mutual mistake in reference thereto, without any new consideration passing between them, whether the mistake was as to the legal effect of the words which the writing contained, or was caused by the accidental omission of words which they intended it to contain. Under the plaintiff's testimony, we think the question whether the insertion of the words in question was or was not for the purpose of correcting a mistake, and making the written instrument express the real agreement between the parties, necessarily arose, and that the evidence was sufficient to authorize the court to submit this question to the jury, if such a contract, limited to Bibb county, was a valid one, it being clear, from the evidence, that the defendant had violated its terms. The plaintiff testified: "My object in buying out Bullock was to get him out of the business and out of competition with me. The understanding was that Bullock was not to engage in business further in Bibb county, after this contract, unless by the

consent of Johnson.  He said he expected to go to Savannah and engage in business. " ·  Could not a jury, from this uncontradicted evidence, taken in connection with the original writing, legitimately reach the conclusion that the agreement between the parties, at the time the writing was executed, was simply that Bullock should not, within five years from its date, engage in the produce business in Bibb county, and that there was no intention to restrain him from carrying on such business elsewhere ?  The witness did not use the expression " My understanding was," but he said, " The understanding was," etc.  One meaning of the word " understanding " is " anything mutually understood or agreed upon, as to come to an understanding with another." (Webster's Dictionary.)  And when a witness, speaking with reference to a contract between himself and the other party to the case on trial, says, " The understanding was " so and so, and neither the other party to the contract, nor any other witness, testifies to the contrary, does not this strongly tend to show that this was what was mutually agreed upon by the parties ?  In the present case the idea that this would be a legitimate construction to put upon the language of the witness is strengthened when we consider the connection in which these words were used by him.  Bearing in mind that the business about which the parties were contracting was the produce business then carried on by Bullock in Bibb county, and that they were dealing with no other business, when the jury were informed by the evidence of Johnson that Bullock said, " He expected to go to Savannah and engage in business," and that "The understanding was that [he] was not to engage in business further in Bibb county," could not they legitimately conclude that " the understanding " about which the witness testified was the mutual agreement between the parties, and that that agreement simply restrained Bullock from carrying on the produce business in Bibb county ?  Add to this the fact that Bullock, a month or two after the contract was entered into, at the mere request of Johnson, without any new consideration whatever, inserted in the written contract the words, " in the county of Bibb, " and who can say that the jury would not, under the evidence, be authorized to find that these words were inserted for the purpose of supplying words

which were necessary in order that it might set forth the real agreement intended by the parties? We think that such a finding by the jury would have sufficient evidence to support it. The court then, upon a motion for nonsuit, was not bound to deal with the contract as if the words, "in the county of Bibb," were not in it. Upon the motion made by the defendant, it was incumbent upon the court to determine whether the contract, with these words in it, was or was not void; and, if it was not void, to submit to the jury the question whether these words were inserted into the writing by the defendant for the purpose of making it set forth the true agreement between the parties.

2. Construing the contract, with the words, "in the county of Bibb," in it, it was limited both as to time and space. It was only in partial restraint of trade. It has been repeatedly held by this court that contracts in partial restraint of trade, if founded upon a valuable consideration and the restraint is reasonable, are not against public policy. *Holmes* v. *Martin,* 10 *Ga.* 503; *Jenkins* v. *Temples,* 39 *Ga.* 655; *Spier* v. *Lambdin,* 45 *Ga.* 319; *Goodman* v. *Henderson,* 58 *Ga.* 567; *Newman* v. *Wolfson,* 69 *Ga.* 764; *Swanson* v. *Kirby,* 98 *Ga.* 586. Such is the general rule, supported by a great mass of authorities. 3 Am. & Eng. Enc. L. (1st ed.) 882, and authorities there cited. For a full and able discussion of the general subject, see the opinion of this court, delivered by Mr. Justice Little, in *Lanier* v. *Rakestraw,* 104 *Ga.* 188. An examination of the above-cited cases decided by this court will show that if the restriction in the contract under consideration had been limited to a particular town or city, there could be no question as to its validity, under the general rule in reference to such contracts. Does the fact that the restriction is as to the county of Bibb render the restriction unreasonable? We think not. In Grundy v. Edwards, 7 J. J. Marsh. (Ky.) 368, where the contract was, not to erect or carry on a tanyard in Morganfield or the county of Union, it was held that "A contract not to carry on a particular business or trade in a designated county, if based upon a valuable consideration, is valid." Nichols, J., in delivering the opinion, said: "No principle is better settled than that a man may lawfully contract not to carry on his trade or business in any par-

ticular town or county." In Smith's Appeal, 113 Pa. St. 579, a contract not to engage in the manufacture of ochre in the county of Lehigh was upheld. In Holbrook v. Waters, 9 How. Pr. 335, a contract not to practice medicine in a certain county was held to be valid. In Cobbs v. Niblo, 6 Ill. App. (6 Bradw.) 60, it was held that under an agreement not to carry on the marble business in a designated county, " in consideration of a partnership settlement and payment to the retiring partner of a certain sum for his share of the assets, a bill [would] lie to restrain him from setting up such business within the restricted territory." The Supreme Court of Wisconsin, in Fairbank v. Leary, 40 Wis. 637, held that " A clause in a partnership agreement wherein each partner agrees not to transact on his individual account, within twenty miles of the village in which such partnership is to do business, the kind of business for the transaction of which it is created, is unobjectionable." . There the partnership was formed " for the purpose of doing a general produce, live stock and wool, and such other business as usually belongs, such as coal, lime, salt, hides, etc. " In Studabaker v. White, 131 Ind. 211, " a bond for $1,000, conditioned that the obligor should sell no more spirituous or malt liquors or wine, within a county named, after a specified date, or cause the same to be sold within said county, either directly or indirectly, after the time specified," or manufacture the same in that county, was held valid. In Nobles v. Bates, 7 Cowen, 307, Sutherland, J., referring to the English cases on the subject, said: " A bond or promise, upon good consideration, not to exercise a trade for a limited time, at a particular place or within a particular parish, is good. But when it is general, not to exercise a trade throughout the kingdom, it is bad." We have cited these authorities for the purpose of showing that the restraint upon trade, in the contract now under consideration, if limited to Bibb county, is not necessarily unreasonable, because of the space covered. Of course, in every case, it is for the court to determine, whether, under its particular facts and circumstances, the restraint imposed by the agreement is reasonable or not. It appears from the defendant's answer that the business which he carried on and which

the plaintiff bought out, including its good-will, was that of buying and selling country produce, and that, by means of peddling-wagons, it was carried on not only in the city of Macon, but throughout the suburbs thereof. Johnson, then, would not have been fully protected, within the field then covered by Bullock's business, if Bullock had been at liberty to carry it on in the county, at any point that he might choose, outside of the city of Macon. As it was necessary to extend the restriction beyond the city limits, so as to include the suburban territory, the boundaries of the county, being well established and generally known, were, for the purposes of convenience and certainty as to space to be covered, probably the most feasible limits to set up; and, considering the nature of the business, the manner in which it was carried on, and the strong probability that considerable of the produce dealt in came from the rural districts of Bibb county, we do not see that the limitation as to territory was unreasonable.

3. The defendant, however, contended in the argument here that the contract, even if limited to Bibb county, is illegal and void, because prohibited by the act approved December 23, 1896 (Acts 1896, p. 68), which makes unlawful " all arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State, or in the manufacture or sale of articles of domestic growth or of domestic raw material." As to this matter, it is sufficient to say that the present bill of exceptions contains no assignment of error which brings before this court for consideration and determination the question made by the contention above mentioned.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., who was disqualified.*