JEFFERSON *v.* MARKERT & COMPANY.

1. One who in selling out a given business and the " good-will " thereof contracted with the purchaser not to engage for a designated period in such a business in a named city could not, without violating his contract, carry on in that city, during the period covered by the agreement, a similar business for another or in another name, of which he was the exclusive manager, and the success of which depended entirely upon his skill, efficiency, personal reputa-

tion, and popularity. The more especially is this so if the arrangement to carry on the business as above was a mere pretext to cover a violation of the original contract.

2. Under the facts disclosed by the record, there was no abuse of discretion in allowing the plaintiffs to amend their petition by withdrawing their waiver of discovery and praying for discovery in answer to specific interrogatories propounded to the defendant, and pertinent to the issue involved; nor did the court, for any reason alleged, err in granting the injunction.

Argued December 17, — Decided December 21, 1900.

Injunction. Before Judge Littlejohn. Dooly superior court. November 22, 1900.

*Thomson & Whipple*, for plaintiff in error.
*Hill & Jones*, contra.

Lewis, J. W. F. Markert & Company, a firm composed of W. F. Markert and P. H. Willis, of Dooly county, on October 5, 1900, filed their equitable petition in Dooly superior court against E. J. Jefferson of that county. The petition was based upon a written contract between the plaintiffs and defendant, entered into on July 12, 1899, a copy of which contract was attached to the petition. It appears from the record that the defendant was engaged, in Cordele, Georgia, in the business of selling, handling, and packing meats, when this contract was entered into. The contract shows that he sold out, for a stipulated sum, certain personal property, an itemized statement of which was attached to the contract; and also in his contract he covenanted and stipulated "not to enter into or engage in the business of selling, handling, or packing meats, in any of its various forms, in said city of Cordele, Dooly county, Georgia, so long as the said parties of the second part [plaintiffs] continue in said business occupying the building leased from said Jefferson in the said city of Cordele; the said party of the first part [defendant] hereby selling and conveying unto the said parties of the second part [plaintiffs] his good-will." The contract further stipulates that Jefferson leases to Markert & Company his one-story brick storeroom with all its appurtenances, describing its location, in the city of Cordele, for the purpose of their occupying the premises with appurtenances as a storeroom, meat market, packing-house and preservatory of meats, etc., for the purpose of carrying on a business of wholesale and retail dealer in all kinds of fish, oysters, etc., for the term of one year from January 1, 1900, at the yearly

rental of three hundred dollars.    It was further agreed that at the expiration of the lease, on January 1, 1901, the purchasers, Markert & Company, were granted by Jefferson the right to renew the lease upon the same terms and at the same price for any period, at their option, of from one to five years.

The petition alleged, that until recently the defendant had complied with the contract in every respect, but that he had lately violated that portion thereof by which he agreed not to engage in any business of selling, handling, or packing meats in any way in the city of Cordele, to plaintiffs' great injury and damage; he having recently, within the past four or five days, opened up a business in the city of Cordele within a hundred feet of petitioners' business, and was offering for sale all kinds of fresh meat, and was running what is generally known as a butcher-shop, advertising for sale all kinds of fresh meats; which acts were in direct violation of the terms of the contract set out.    The petition further alleged, that defendant had opened up that business under the name and style of the Cordele Packing Company; was asking, advertising, and competing for the business of petitioners, and was doing those things over their protest, and in direct violation of the contract; that plaintiffs paid defendant much more than the value of the market fixtures, and paid that consideration for the purpose of getting defendant out of the way, and out of competition with them in that business; that if defendant were allowed to continue such business as he had started and contemplated doing, it would damage plaintiffs in an irreparable manner, cut off their sales in business, and the injuries and damages would be difficult to measure, and it would be almost impossible for a jury to estimate intelligently the damages which they would sustain.    They alleged that the damages would be a thousand dollars annually.    They alleged insolvency of defendant, and that he would be unable to answer in damages any judgment that might be obtained against him.    Besides the prayer for process, they prayed that defendant be enjoined and restrained from carrying on and conducting the business of a market or butcher-shop, or the business of packing or selling meats, either at wholesale or retail, in the city of Cordele, in violation of his contract. This petition was sworn to by one of the plaintiffs.    Upon the petition the judge issued a rule nisi, calling upon defendant to show cause why the injunction should not be granted as prayed for, and

in the meantime enjoined and restrained the defendant from carrying on or conducting the business of selling, handling, or packing meats, in any of its various forms, or offering for sale any meats, in the city of Cordele, and from doing any and all things complained of in the petition. The defendant answered this petition, denying that the plaintiffs paid more than the market value of the fixtures, and alleging that there was absolutely no consideration paid for his good-will mentioned in the contract. He further denied, in the course of his answer, that he had opened up the business known as the Cordele Packing Company. He alleged that this was not his business. He had no financial interest in the same, and was not operating or managing the same.

We have not undertaken above to copy every allegation in the petition and answer, but have related all the facts alleged therein necessary to throw light on the issue involved in the case. Pending the hearing of the case, on the application for injunction, the plaintiffs were, over objection of defendant's counsel, allowed to amend their petition by striking from the original petition their waiver of discovery, and by way of further amendment they prayed the court to require the defendant to answer the interrogatories they propounded in their amendment. It is unnecessary to give in detail these questions, but, after carefully reading over them, we conclude they were all pertinent to the controlling issues in this case. In obedience to the court's order, the defendant answered these questions. After the close of the evidence and argument of counsel, the court granted the injunction prayed for. Upon this judgment the defendant below assigns error.

On the hearing of the case evidence was introduced in behalf of the plaintiffs, that the defendant had opened up, under the name and style of the Cordele Packing Company, a business about a hundred feet from where that of the plaintiffs was located, in the same town, and directly in competition with their business. There was testimony tending to show that the defendant was directing and controlling that business at the store of the Cordele Packing Company; that he did all the buying, gave directions as to the details of the business; and that a number, if not all, of the transactions of the business were done in his own name as an individual, it being the same character of business that he had sold to the plaintiffs. There was evidence tending to show that plaintiffs paid the defend-

ant more for his fixtures than they were worth, stating to him, at the time of such advanced payment, that it was in consideration of his good-will and his agreement not to enter into a like business in competition with the plaintiffs.    G. R. Sims, the general manager of the Cordele Ice Company, who seemed to have no interest in this issue, testified that, soon after the Cordele Packing Company opened up, Jefferson arranged with this ice company for it to furnish to the Cordele Packing Company such ice as it might use in the conduct of its business, and that all the ice sold by the Ice Company to the Packing Company was sold entirely upon his responsibility; that Jefferson called in person on the Ice Company, and made himself responsible for the ice purchased; that, under the agreement had with him, the tickets for the ice, signed Cordele Ice Company, were charged to the account of Jefferson, and witness knew of no other one having control or charge of the business.    R. W. Jones testified that, previously to the opening of the meat-market now run and operated under the name of the Cordele Packing Company, he was approached and asked by Jefferson to become interested as a partner in the business, Jefferson stating to witness that he was under contract with Markert & Company which prohibited him from engaging in the meat-market business in his own name, but that if witness would go in business with him, he would arrange that his part of the market would be held in his wife's name.    Witness declined to enter into business with him.    A traveling salesman of the Atlanta Paper Company testified that he visited Cordele soon after the market now operated by Jefferson was opened for business, and called at his market several times for the purpose of selling paper, twines, and lard trays, such as are generally used in the course of the market business; that being unable to find him at the store, or any one authorized to give an order for the articles, he went to the home of Jefferson in the city of Cordele, and there solicited an order for the above-named articles; that he ordered through him some paper, twine, and trays, and witness was instructed to charge the same to Jefferson in person, and have the same shipped to Jefferson, which he did.    The name of Mrs. M. E. Jefferson was never mentioned to witness by her husband, witness dealing with E. J. Jefferson exclusively, knowing no one else in the transaction, except that the goods were to be shipped through Wight & Weslosky Company, for E. J. Jefferson.    The agent of the Southern

Express Company testified that he received, during the past six weeks, one package, the contents of which were unknown to him, and one sack of meat, marked to E. J. Jefferson, Cordele, Ga.

Much of this evidence was contradicted by Jefferson and his wife, their testimony tending to show that the business belonged to her, and was being conducted by E. J. Jefferson as her employee and in her service; and that he had no interest whatever in the business. He denied having instructed the salesman of Atlanta to send the goods to him. He claimed that he ordered the ice to be sent to the Cordele Packing Company; that he paid for no ice with his own money, but with the money of his wife. Mrs. Jefferson also testified to the effect that the business was her own, established in the city of Cordele with her money, and was being conducted and operated through her agents and employees; that she got the money from the sale of her brick store in Cordele, from the proceeds of which she established the business; that she knew nothing about the contract between her husband and Markert & Company; that she was not consulted about the same. She exhibited insurance policies showing that she insured the property of the Cordele Packing Company.

1. It has been well settled by this court, that a contract in reference to selling the good-will of the vendor, and stipulating that he will not enter into or engage in a similar business, if reasonable as to time and place, is enforceable. On this point, see *Jenkins* v. *Temples*, 39 *Ga.* 655, where it was held, in effect, that courts will entertain an action for damages for a breach of such contract, and that it was error in the court to dismiss the plaintiff's action on the ground that the damages were too remote, and that no specific sum was agreed upon as stipulated damages. See also the same principle announced in *Swanson* v. *Kirby*, 98 *Ga.* 586 (2); *Rakestraw* v. *Lanier*, 104 *Ga.* 189 (3), and opinion on page 199 et seq.; *State* v. *Central Railway Co.*, 109 *Ga.* 726. There was really no controversy between counsel for the parties in the present case as to the reasonableness and validity of this contract, and the question before the judge was simply whether or not the defendant had violated it. It is contended, however, by counsel for the plaintiff in error, that the judgment of the court was contrary to evidence, in that the testimony shows the defendant below was not the owner of this building, and had no financial interest in the same; and that,

therefore, it did not show upon his part a violation of the contract; that he was merely engaged in the service of his wife, conducting the business as her employee.    This gives rise, so far as we have been able to ascertain from investigation, to a new question before this court.    After a careful reflection over this question, we are satisfied that the principle laid down in the first headnote is a correct statement of the law bearing on this case; and that a person entering into such a contract, not only stipulating for the sale of his good-will to the vendee, but obligating himself not to engage in a business of selling, handling, or packing meats, in the city of Cordele, during a specified and reasonable time, could not, without violating that contract, carry on in that city, during the period covered by the agreement, a similar business for another, or in another name, of which he was the exclusive manager, and the success of which depended upon his skill, efficiency, influence, and popularity.    What is a fair and proper construction of the contract into which he entered ?    There is no question, under the evidence, that the business in which he engaged was in direct competition with the business bought of him by the plaintiffs.    One thing he sold to them was his good-will; an obligation not to engage in a similar business in any of its various forms of selling and packing meats in Cordele.    In the light of the testimony, there can be no question that he engaged in such business; and, instead of giving the parties with whom he contracted the advantages of his good-will, he engaged in a service and occupation which directly had the effect of antagonizing and competing with their occupation, to their injury and damage, by the exercise of his skill and experience in the conduct of a similar business.    The contract is not confined to preventing him from entering upon such business in his own name, as owner and proprietor thereof.    It can be violated as much by an employee and agent, especially one who has the conduct and control of the business, as it could were he the proprietor of the business in which he engaged.    This is more especially the case, if he makes an arrangement to carry on the business for his wife, and in her name as sole owner, under a mere pretext to cover the violation of the original contract.    We can not say there was not such evidence in the present case as to authorize the judge, in passing upon the issue of fact, to infer that such was his purpose.

The Supreme Judicial Court of Maine, in Emery *v.* Bradley, 88

Me. 357, 34 Atl. 167, lays down this principle, bearing directly upon the question at issue: "When a vendor of the plant and good-will of a business stipulates, as a part of the contract of sale, that he will not go into or carry on that kind of business in that place, he can be enjoined by decree in equity from carrying on that business in that place as clerk or agent of some other person." In Boutelle v. Smith, 116 Mass. 111, it appeared that A and B, bakers in F., bought of C and D their business as bakers in the same town, and their personal property connected with that business, and made a contract with them whereby C and D agreed "that they will not or either of them hereafter engage in the business of bakers in the town of F., and will not directly or indirectly engage in any business or do any act that shall interfere with the business thus purchased for the sale of bread on the several bread-routes heretofore connected with said business," for five years. It was there held that the contract was a valid one, and that C and D were liable, if one of them drove a bread-cart in F. on his former routes and supplied his former customers with bread, acting as a hired servant of a baker in another town. In Kramer v. Old, 119 N. C. 1, s. c. 56 Am. St. Rep. 650, it was decided, not only that such an agreement was valid, but, "Where the vendors of a property and business stipulate that they will not engage in the same business in the same place thereafter, neither of them has the liberty to take stock in or to help to organize or manage a corporation formed to compete with the purchasers." It was further decided, "A single consideration of paying a specified sum of money by one party to a contract is sufficient to support several distinct stipulations by the other party to do or to refrain from doing certain things." These are all the authorities we have been able to find directly in point, but we think the principle announced clearly sustains the conclusion we reach in the present case.

2. Another ground of complaint was alleged error in the judgment of the court allowing the plaintiffs time to amend their petition pending the trial, as set out in the recital of facts above. In the light of the testimony that had up to that time been developed on the trial, we do not think the ruling of the judge on this point was any abuse of discretion, but on the contrary he did exactly what was right. There was considerable conflict in the evidence of the defendant and his wife, on the one side, and the witnesses

introduced by the plaintiffs, on the other.    We have not undertaken above to give in detail all the testimony that was before the judge on the trial, but simply enough of the material evidence to indicate the degree of conflict therein, and also to show the inconsistency of the testimony between the witnesses for the parties. A fundamental principle of law, which is embodied in the code, and it should be remembered by every judicial mind in passing upon the legal rights of parties, is that "the object of all legal investigation is the ascertainment of truth."    We think it was evident that the purpose of counsel for plaintiffs below in offering this amendment was to sift the defendant, as far as practicable, in an effort to ascertain the true relation existing between him and his wife, and what position he really occupied, with reference to the business in which he was engaged as her alleged employee or agent.    In his answer to these questions he stated that he had made no definite contract with his wife as to the term of his employment, salary to be paid, whether by day, week, month, or year ; that at the time she opened her market, the Cordele Packing Company, she engaged one Varnadoe to sell and handle meats and conduct the market for her.    After Varnadoe had served possibly a month or so, he and Mrs. Jefferson had a settlement, and he no longer acted in that capacity.    Afterwards Mrs. Jefferson engaged and requested him to take the place of Varnadoe; to go and sell meat in the market, and do generally other services as a butcher, and to keep the market open and in operation, exercising no detailed control over his doings in the capacity in which he was engaged in the market, as he was presumed to understand the duties and services to be rendered. She had a right, however, to give such direction in respect to such business, and the same would be respected by him, as the market belonged to her.    He stated further, in the course of his answers, that he could not say that Mrs. Jefferson knew anything about the butcher business, except what she may have learned from observation; does not think she knows anything of the details of such a business, and she relies on him to keep the market in good running order, and to attend to such things as are required to be performed in such business.    He stated that he was the head of the family, consisting of his wife and four children.    These are some of the material facts to which he testified, and we think, in themselves, the admissions in regard to the character of the business and the

conduct of the defendant with reference to its operation were an aid to the judge in arriving at a just conclusion on the merits of the application.　In fact, the evidence to our minds seems conclusive that the defendant was engaged in a competitive business which he in his contract had obligated himself not to enter into; and even treating the testimony as making out a case that his wife was really the owner of the business, and he was only an employee or agent of hers in its conduct and management, yet we think the decided weight of the evidence shows that in the service in which he engaged he was exercising his powers, influence, and skill, contrary to the true spirit and proper construction of his contract, and to the injury and damage of the plaintiffs as set forth in their petition.

There is nothing in the bill of exceptions raising any question under the act of December 23, 1896, declaring unlawful certain "arrangements, contracts, agreements, trusts," etc.　We conclude that the court below did not err in granting the injunction prayed for.

*Judgment affirmed.　All the Justices concurring.*