MARKERT & COMPANY *v.* JEFFERSON.

J. sold the business in which he was engaged to M. & Co., a firm composed of M. and W., and in the contract of sale covenanted not to engage in a similar business, in the same city, so long as M. & Co. continued the business in the building leased from J. at the time of the sale. On the application of M. &

Co., J. was afterwards enjoined from conducting a like business in that city. Subsequently the firm of M. & Co., was dissolved, W. selling all his interest therein to M., who continued the business, in the firm name, by consent of W., in the building leased from J. *Held*, that the dissolution of the firm did not of itself relieve J. from the operation of the injunction.

Argued February 13, — Decided March 25, 1905.

Rule for contempt. Before Judge Littlejohn. Dooly superior court. January 16, 1905.

*Hill & Royal*, for plaintiffs. *E. F. Strozier*, for defendant.

FISH, P. J. In November, 1900, W. F. Markert & Company, a partnership composed of W. F. Markert and P. H. Willis, obtained an injunction against E. J. Jefferson, restraining him "from entering into or engaging in the business of selling, handling, or packing meats in any of its various forms in the city of Cordele." Upon review, the ruling of the judge, granting the injunction, was affirmed by this court. *Jefferson* v. *Markert & Co.*, 112 *Ga.* 498. In November, 1904, W. F. Markert & Company presented to the judge of the superior court, who had granted the injunction, an application that Jefferson be adjudged to be in contempt for violating the injunction. Upon the hearing of this application, the judge passed the following order; "After a careful consideration of the pleadings and testimony in this case, I am of opinion that the acts and conduct of Jefferson, as disclosed by the answer and testimony, would be a breach of the covenants in the contract from the violation of which he had been enjoined, and therefore would place him in contempt of court, except for the fact that it appears from the pleadings and testimony that the firm of W. F. Markert & Company had dissolved by the withdrawal of P. H. Willis from said firm. Under the contract neither Markert nor Willis had any separate, distinct, nor independent right. Jefferson did not contract with Markert, nor did he contract with Willis, but he contracted with those two persons only when associated together as a mercantile firm. The enforcement of covenants like the one now under consideration is not favored by the law, or by public policy, and therefore such covenants will be strictly construed. The firm contracted with by Jefferson no longer exists, and W. F. Markert as an individual nor W. F. Markert under the firm name of W. F. Markert & Company can not require the performance by Jefferson of said cov-

enants; and he is therefore discharged from the rule." The contract which Jefferson had been enjoined from violating contained the following clause: "And the said party of the first part [Jefferson] further covenants, agrees, and stipulates not to enter into or engage in the business of selling, handling, or packing meats in any of its various forms in the city of Cordele, Dooly county, Georgia, so long as the said parties of the second part [Markert & Co.] continue in said business, occupying the building leased from said Jefferson, in the said city of Cordele. The said party of the first part hereby selling and conveying unto the said parties of the second part his good will." It appeared on the hearing that after the injunction was granted Willis retired from the partnership and sold and transferred all his interest and good will therein to W. F. Markert, and agreed that Markert might continue to conduct the business in the firm name of W. F. Markert & Company; and that Markert was thus carrying on the business in the building leased from Jefferson. As will have been seen, the judge decided that the evidence before him showed that the acts and conduct of Jefferson would make him guilty of contempt in violating the injunction, but for the fact that the partnership of W. F. Markert & Company had been dissolved, subsequently to the granting of the injunction, by the withdrawal of Willis therefrom, and for that reason alone Jefferson was discharged from the rule.

It is well settled that the good will of a trade or business of a partnership and the beneficial interests it has under an agreement by another not to engage in a like business in the same community may be assigned by a retiring partner to the one remaining in the business. *Swanson* v. *Kirby*, 98 *Ga.* 586, and cases cited. Therefore when Willis retired from the partnership and sold and transferred all of his interests therein, including the good will of the business, to Markert, the latter became entitled to all of the benefits of the contract which Jefferson had made with the firm, and the mere dissolution of the partnership did not release Jefferson from the obligations of his covenant with it. In Guerand *v.* Dandelet, 32 Md. 561, the facts were, that Guerand leased a dyeing and scouring establishment, in the city of Baltimore, for a term of years, to Feuillan & Dandelet, partners, and at the same time sold them the good will of the business, and covenanted

never to enter into competition, directly or indirectly, with the lessees, in Baltimore, in the trade or profession of dyeing and scouring. The partnership between Feuillan and Dandelet was subsequently dissolved, and Dandelet became sole owner of the partnership interests. The lease expired and Dandelet removed next door and established himself in the regular business of dyeing and scouring. Guerand then made an arrangement with his son, by which the trade was re-established at the old stand under the name of the son, the father being the real proprietor. On an application by Dandelet for an injunction to restrain Guerand from carrying on the business, it was held, that the covenant was valid, that the interest that Feuillan, as a partner, had under the covenant was assignable, and that the dissolution of the partnership between him and Dandelet did not release the covenantor, Guerand, from his obligation. Another case directly in point is Hedge, Elliott & Co. v. Lowe, 47 Iowa, 137. We can not, therefore, agree to the view of the law entertained by our learned brother of the trial bench; and the judgment is, therefore,

*Reversed.     All the Justices concur.*