PRAME v. FERRELL.

(Circuit Court of Appeals, Sixth Circuit. January 20, 1909.)

No. 1,836.

CONTRACTS (§ 117*) — CONSTRUCTION AND VALIDITY—CONTRACTS IN RESTRAINT OF TRADE—SALE OF BUSINESS.

A covenant by a partner, on the sale to his copartner of his interest in the property and good will of the partnership, which was engaged in the manufacture of an article then sold generally throughout the United States, although not in every state, not to engage in the same business, though without limitation as to time or territory, will be construed to limit the restraint to the United States, and, as so limited, it is reasonable and enforceable, notwithstanding the lack of limit as to time, where no monopoly was created, but the business was subject to active competition, so that no public interest is involved.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 554–569; Dec. Dig. § 117.*

Monopolistic contracts, validity as affected by public policy, see note to Cravens v. Carter-Crume Co., 34 C. C. A. 486.]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

J. A. Fenner, for appellant.
William Howell, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge. From the opinion of Judge Tayler, who heard the case in the Circuit Court, we quote the following as a sufficient statement of the facts:

"Prior to February 1, 1899, the complainant, Ferrell, and the defendant, Prame, were partners under the firm name of A. T. Ferrell & Co., engaged in the business of manufacturing and selling machines known as 'cleaners' or 'separators,' for cleaning seeds, grains, and other products of the farm

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and garden, at Saginaw, in the state of Michigan. The firm had built up a business extending practically throughout the country. While sales had not been made in every state of the Union, the trade, however, did extend from Massachusetts to California and from the Lakes to the Gulf. Prame had no technical knowledge of the business and took no active part in its management. He resided at Shiloh, Ohio, and occasionally visited Saginaw, where he became familiar with the general conduct of the business, which was quite profitable, considering the amount of capital invested in it. About the 1st of February, 1899, Ferrell and Prame discontinued their partnership agreement in the business, and the latter sold to Ferrell, for the consideration of $12,500, all of his right, title, and interest in and to the copartnership business of the firm, including all personal property, books of account, and unsettled accounts and notes, manufactured goods, stock, assets, factory building, machinery, choses in action, and all other property of every kind and character belonging to the partnership, together with all his interest in the business and in the profits thereof and in the good will of the same. Immediately following the description of the property sold occurs this language: 'And I hereby agree to and with the said Albert T. Ferrell that I will not engage in the business of manufacturing and selling grain and seed separators either directly or indirectly, or allow my name to be used in said business.' The claim is made by Ferrell that the invoice value of Prame's interest in the property was not to exceed $10,000, and that the additional $2,500 was paid to him for the good will. Prame testifies that he has no definite knowledge of the value of the property, but denies that anything was said about good will. Since the testimony of Ferrell is definite, and the contract specifically includes the good will, it is impossible to escape the conclusion that the consideration paid was (as, indeed, it must have been) intended to cover the good will, whatever may have been its value. A demurrer to the bill was overruled, and, the parties having taken their testimony, the case came up for final hearing a short time ago.

"So far as the legal status of the parties is concerned, there is no serious conflict in the proofs. It appears that, as heretofore stated, the business of A. T. Ferrell & Co., prior to the purchase of Prame's interest, covered a large area of country, and that, through their salesmen, effort was being made to extend it into every region of the country where cleaners and separators of the kind which they made could be used. As illustrating the wide area over which business was transacted, it may be said that sales were made in Massachusetts, Maryland, New York, Pennsylvania, California, Montana, Minnesota, Georgia, Mississippi, Texas, and in practically all of the states of the Middle West. In 1905, the defendant went into business at Galion, Ohio, manufacturing separators of the same general character as, and bearing a physical resemblance to, the separators and cleaners which were then, and had theretofore been, made by the complainant and the firm of which the defendant had been a member. At that time the defendant took into his employ a salesman of the complainant. This salesman had for some years, as he says in his testimony, traveled in the interest of the complainant before entering defendant's employ, from coast to coast and from Michigan to Alabama. While traveling for the defendant, he had covered some six or seven states, meeting a large number of the customers of the complainant and selling to many of them. In February, 1907, the complainant filed his bill in this court, setting up the substance of the facts which the proof has disclosed, and asking that the defendant be enjoined from carrying on this business in violation of his contract."

The decree of the Circuit Court enjoined the defendant from further manufacturing and selling grain and seed cleaners or separators, as then carried on at Galion, Ohio, or elsewhere in the United States, from further attempting to advertise, sell, or dispose of such cleaners in the United States, and from engaging either directly or indirectly in, or allowing his name to be used in connection with, the manufacture of grain and seed separators anywhere in the United States.

The decree is assailed upon the grounds, first, that, inasmuch as the covenant of restraint contains no specific limitation of territory, it must therefore be construed as intended to apply throughout the entire world, and that, being thus unlimited, both as to time and territorial extent, it is void; second, that, the covenant being void for the reason stated, no relief can be given by way of restraint over a limited territory, as such action would be to make a new contract for the parties; and, third, that, treated as a covenant not to engage in business throughout the United States, the restraint imposed was unreasonable and void, as being broader than necessary to protect the complainant in the reasonable enjoyment of the business purchased, upon the ground that the proofs do not show that the business in question was, at the time of the purchase of appellant's interest, conducted throughout the entire United States, and that under the case presented here the reasonable necessity of the attempted restraint must be determined as of the date of the covenant not to engage in competitive business, and cannot be construed to extend over an area to which the business may afterward be extended. The first and second propositions will be considered together.

1. It is true that the covenant in question contains no specific limitation as to the territory over which the restraint shall operate. It may be conceded, for the purposes of this opinion, that a covenant by appellant not to engage in business anywhere throughout the world would be unreasonable and unenforceable. But in the view we take of the case it is not necessary to decide whether a covenant unlimited both as to time and territory would in any case be valid, nor whether, if the covenant shall be construed as one imposing restraint throughout the entire world, it could be enforced as regards the United States. The bill alleges that the business of the firm, at the time of the purchase of appellant's interest, extended throughout the United States; that the stipulation in question was intended to prevent competition throughout that territory; and the prayer is that the restraint extend throughout the United States. As already noted, the restraint imposed by the decree appealed from is applied to the entire United States, but extends no farther.

The covenant in question does not in express terms extend the restraint throughout the world. It is only by inference, drawn from the lack of specific definition, that a construction can be adopted that restraint throughout the entire world was intended and attempted. Taking into account the circumstances of the case, the nature and extent of the business, and the situation, objects, and interests of the parties, we are satisfied that the restraint was intended to apply to the entire United States, but not to other parts of the world. Being so satisfied, we have no difficulty in construing the covenant accordingly. Such construction is not only permitted by the general rules for the construction of contracts, but has been specifically applied under facts similar to those existing here. Hubbard v. Miller, 27 Mich. 15, 15 Am. Rep. 153; Moore, etc., Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 210, 6 South. 41, 13 Am. St. Rep. 23, and cases cited at the latter page. In both these cases covenants in terms fully as general

as those here employed were construed as intended to limit the restraint to a territory directly tributary to the location of the business. The language and reasoning of Justice Christiancy in Hubbard v. Miller, 27 Mich. 21, 22, 15 Am. Rep. 153, is peculiarly applicable to the facts of this case. The case of Hubbard v. Miller is cited with approval by this court in Knapp v. S. Jarvis Adams Co., 135 Fed. 1012, 70 C. C. A. 540. We construe the covenant here in question as limiting the restraint to the United States. It is conceded that under the authorities a covenant so limited as to territory may be valid, notwithstanding the lack of limit as to time.

2. It remains to consider whether the covenant, as so construed, is reasonable and valid. In the case of Gibbs v. Consolidated Gas Co. of Baltimore, 130 U. S. 396, 409, 9 Sup. Ct. 553, 557, 32 L. Ed. 979, the modern rule is thus stated:

"Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the contract may be sustained. The question is whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is or is not unreasonable."

This rule has been applied in numerous cases, including Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464, Oakdale Mfg. Co. v. Garst, 18 R. I. 484, 28 Atl. 973, 23 L. R. A. 639, 49 Am. St. Rep. 784, Harrison v. Glucose Sugar Refining Co., 116 Fed. 304, 53 C. C. A. 484, 58 L. R. A. 915, and Knapp v. S. Jarvis Adams Co., 135 Fed. 1008, 70 C. C. A. 536. Applying this rule, and taking into account the nature and extent of the business of the firm at the time of the purchase of appellant's interest, was the covenant not to engage in a competing business anywhere in the United States unreasonable, as being unnecessary for the protection of the purchaser in the enjoyment of the thing purchased? By the sale of appellant's interest no monopoly was created. The competition in the sale of grain separators and cleaners then was, and always since has been, active and substantial. No public interest will thus be violated by imposing the restraint demanded. In our opinion, the covenant of restraint, as so construed by us, was entirely reasonable, taking into account the circumstances and situation of the parties and the business involved.

The evidence shows that the firm had expended annually large sums in advertising and in seeking to extend its business. It already had customers in practically all the grain-raising states. It had been and was making an active effort, by selling either to the consumer direct or through jobbers, to cover the entire United States, so far as the trade in grain separators existed. It has been expressly held by this court, speaking through Judge Severens, that:

"With respect to the territory to which the restriction should apply, the rule has always been that it might extend to the limits wherein the plaintiff's trade would be likely to go." Knapp v. S. Jarvis Adams Co., 135 Fed. 1012, 70 C. C. A. 540.

The fact that the appellee had not been actively engaged in carrying on the business of the firm does not make the restraining of his

competition unreasonable. He had had access to the books of the firm, and more or less information or means of information as to the business methods of the firm, as well as of the profitableness of the business. He had directly profited by his connection with the business, and he received compensation for his agreement not to compete. He was, by reason of this former connection, in a better position to compete with appellee, and to interfere with the good will of the business sold. The evidence shows that he actively attempted to interfere with that good will. The fact that, up to the time of the sale of appellant's interest, the latter had not been actively engaged in the business sold, so far from making the restraint unnecessary and unreasonable, in fact relieves the case of the hardship which sometimes attends the restraining of an individual from carrying on his personal trade or employment.

The demurrer to the bill was properly overruled. The decree of the Circuit Court on the merits was right, and is affirmed, with costs.