## MANNING et al. v. MARCHMAN.

On the facts the grant of an interlocutory injunction against the operation of a picture-show business within a city, in violation of a covenant in the contract of sale thereof, was not erroneous.

No. 1854. JUNE 18, 1920. REHEARING DENIED AUGUST 17, 1920.

Injunction. Before Judge Morris. Cobb superior court. January 2, 1920.

R. B. Blackburn and Tye, Peeples & Tye, for plaintiffs in error.

D. W. Blair and Anderson & Roberts, contra.

ATKINSON, J. In April, 1916, H. V. Manning, proprietor of a moving-picture show at Marietta, called "The Gem," sold the business to W. A. Sams under a written executory agreement to execute a bill of sale upon completion of certain deferred payments of the purchase-price. The agreement contained a covenant upon the part of Manning, "not to operate within the City of Marietta a moving-picture show during the term of five years from this date [April 29, 1916], or to be connected in any way with a moving-picture show in said city during said term of five years; and further, in the event the said W. A. Sams is still in the moving-picture shows business in said city, then the said Hugh V. Manning agrees that he will not operate or be connected in any way with the operation of a moving-picture show in said City of Marietta for an additional five years from the expiration of the first five years, above set out, or ten years from this date." In July of the same year Sams transferred the contract to F. G. Marchman, the latter assuming liability to Manning for the balance of the purchase-price remaining unpaid by Sams. In a few days thereafter Marchman made final payment to Manning and received from him a bill of sale of the business, which identified the executory contract with

Sams by giving its substance and date, and expressed, among other things, a covenant upon the part of Manning "to carry out with said Marchman such covenants and agreements and [as] set out in the agreement dated as aforesaid." Subsequently Marchman closed "The Gem," and continued to operate another moving-picture theatre in Marietta called "The Strand," which also he had purchased from Sams. In April, 1919, Marchman made a written lease of "The Strand" to Dan Millard as agent for a corporation to be organized, for the term of five years at a stated monthly rental, the contract giving the lessee the right to "vacate the premises at any time upon 30 days written notice to the lessor, by paying the rent for that month with an additional one month's rental." In June, 1919, Manning and J. H. C. Wink, copartners, commenced to operate "The Dixie," a rival moving-picture theatre in Marietta. On July 31, 1919, Marchman instituted an action against Manning, to enjoin him from engaging in the moving-picture show business in Marietta. The trial judge to whom the petition was presented granted a rule nisi. Manning and Wink were both non-residents, and the petition was served August 1, 1919, on the brother of Manning, who was the agent in charge of "The Dixie" theatre at Marietta for Manning and Wink. At that time Manning and Wink as partners conducted four other moving-picture theatres in other cities. On August 15, 1919, Manning executed a written bill of sale, purporting to convey to Wink his half interest in "The Dixie," the consideration expressed being $3,000, of which $500 was stated to be paid in cash and notes given for the balance divided into three annual payments. On the same day Wink executed a mortgage to Manning on "an undivided one-half interest" in "The Dixie" theatre to secure the deferred payments. The bill of sale and mortgage were recorded respectively on September 24 and 27, 1919. After this transfer Manning's brother continued to operate "The Dixie" theatre as agent for Wink, without any ostensible sign as to change of ownership. Manning and Wink as copartners continued their operation of the moving-picture show in the four other cities as before. On December 12, 1919, which was after the bill of sale by Manning to Wink, Marchman amended his petition, charging that the purported sale by Manning to Wink was not bona fide but merely colorable, and made for the purpose of enabling Manning through his

connection with the partnership to continue violating his covenant with Marchman not to "operate" in Marietta within the period limited by the contract. Wink was duly made a party defendant. Both defendants filed answers. At an interlocutory hearing the judge granted a temporary injunction, enjoining the defendants from operating the "Dixie Theatre."

On conflicting evidence the judge was authorized to find that at the time of the alleged sale to Wink, he had notice of the covenant of Manning with Marchman not to engage in the moving-picture show business in Marietta for a limited period, and that the sale was a merely colorable transaction for the purpose of shielding Manning in the continued breach of his covenant, and consequently that the business was still being conducted by Manning and Wink. Under the circumstances, the operation of "The Dixie" theatre by Manning and Wink could be enjoined during the period limited in the covenant made by Manning to Marchman. The lease of "The Strand" to Millard as agent did not deprive Marchman of the right to sue for injunction on the ground that he had no interest to protect. The judge did not err in granting the temporary injunction.          *Judgment affirmed.    All the Justices concur.*