### LEGG et al. v. HOOD.

ATKINSON, J. 1. Where a proprietor sells out a given business, and as a part of the contract covenants not to engage in a similar business in a particular locality, if such covenant is reasonable and otherwise proper it will not be set aside as void on the ground that it is in restraint of trade and contrary to public policy. *Swanson* v. *Kirby*, 98 *Ga.* 586 (26

S. E. 71); *McAuliffe* v. *Vaughan,* 135 *Ga.* 852 (3), 857 (70 S. E. 322, 33 L. R. A. (N. S.) 255, Ann. Cas. 1912A, 290), and cases cited. Such covenant will be reasonable and proper if it only affords a fair protection to the party in whose favor it is made, and is not injurious to the public. 6 R. C. L. 798, § 200, and cases cited in notes 20 and 1; and where it is of such character, it may extend to all the territory covered by the business the good will of which has been sold. 6 R. C. L. 795 et seq., § 195; Fleckenstein *v.* Fleckenstein, 76 N. J. L. 613 (71 Atl. 265, 24 L. R. A. (N. S.) 913); Harbison-Walker Refractories Co. *v.* Stanton, 227 Pa. 55 (75 Atl. 988); Cowan *v.* Fairbrother, 118 N. C. 406 (24 S. E. 212, 32 L. R. A. 829, 54 Am. St. R. 733); Joyce on Monopolies, 142, § 109; Prame *v.* Ferrell, 166 Fed. 702 (92 C. C. A. 374).

(a) The rulings here made are in accord and do not conflict with *Holmes* v. *Martin,* 10 *Ga.* 503; *Jenkins* v. *Temples,* 39 *Ga.* 655 (99 Am. D. 482); *Spier* v. *Lambdin,* 45 *Ga.* 319; *Ellis* v. *Jones,* 56 *Ga.* 504; *Goodman* v. *Henderson,* 58 *Ga.* 567; *Newman* v. *Wolfson,* 69 *Ga.* 764; *Swanson* v. *Kirby,* 98 *Ga.* 586 (supra); *Rakestraw* v. *Lanier,* 104 *Ga.* 188 (30 S. E. 735, 69 Am. St. R. 154); *Bullock* v. *Johnson,* 110 *Ga.* 486 (35 S. E. 703); *Jefferson* v. *Markert,* 112 *Ga.* 498 (37 S. E. 758); *McAuliffe* v. *Vaughan,* 135 *Ga.* 852 (supra); *Holtman* v. *Knowles,* 141 *Ga.* 613 (81 S. E. 852); *Busk* v. *Wolf,* 143 *Ga.* 18 (84 S. E. 63); *Shirk* v. *Loftis,* 148 *Ga.* 500 (97 S. E. 66); *Wells* v. *First National Exhibitors' Circuit,* 149 *Ga.* 200 (99 S. E. 615); *Manning* v. *Marchman,* 150 *Ga.* 309 (103 S. E. 795), cited in the brief of the attorney for the plaintiff in error, applying principles stated above in cases where the prohibited locality was confined to towns, cities, or counties.

2. Ordinarily he who knowingly accepts and retains any benefit under a contract which he has been induced to make by fraud, after he has knowledge of such fraud, affirms the validity of the contract and will not be heard thereafter to repudiate it. 6 R. C. L. 932 et seq., § 316; Civil Code, § 4305; *Couch* v. *Crane,* 142 *Ga.* 22 (7), 29 (82 S. E. 459); *Tuttle* v. *Stovall,* 134 *Ga.* 325 (67 S. E. 806, 20 Ann. Cas. 168).

(a) Under application of this principle, even if the defendants under the circumstances of the case were damaged by the false statements by Stoner that he was not buying for Hood, the defendants, having retained the advantages flowing to them under the contract after knowledge of such false statements, will be held to have elected to affirm the validity of the contract.

3. The contract was assignable, and Hood as assignee of the contract and owner of a portion of the stock in the corporation had such interest as would authorize him to bring a suit to enjoin violation of the covenant. *Swanson* v. *Kirby,* 98 *Ga.* 586 (2) (supra); *Holtman* v. *Knowles,* 141 *Ga.* 613 (supra).

4. It was not alleged in so many words that the damages were irreparable because of the disability of ascertaining the amount thereof, but such was alleged in substance, and there was evidence to support such allegations. Under such circumstances the judgment granting an interlocutory injunction should not be reversed on the ground that it was not specifically alleged that the plaintiff was irreparably damaged. *Bullock* v. *Johnson,* 110 *Ga.* 486 (2) (supra).

5. It would be a violation of such a covenant for J. H. or L. N. Legg, individually or jointly or in collusion with H. L. B. Legg, Miss E. D. Legg, and the Plainville Brick Company, in the described territory to engage in the manufacture or sale of brick in competition with the Legg Brick Company. *Jefferson* v. *Markert,* 112 *Ga.* 498 (supra); *Manning* v. *Marchman,* 150 *Ga.* 309 (supra).

6. In the act of Congress of July 2, 1890, c. 647, § 1, 26 Stat. 209 (9 Fed. Stat. Ann. (2d ed.) 644, U. S. Comp. St. § 8820), it is declared: " Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." Other portions of the act provide penalties for violation of the law. It has been held that the sale of a business, and the surrender of the good will pertaining to that business, and an agreement thereunder, within reasonable limitations as to time and territory, not to enter into competition with the purchaser, when made as part of the sale of the business, and not as a device to control commerce, is not within this act. Camors-McConnell Co. *v.* McConnell, 140 Fed. 412, 987 (72 C. C. A. 681); Darius Cole Trans. Co. *v.* White Star Line, 186 Fed. 63 (108 C. C. A. 165); Harbison-Walker Refractories Co. *v.* Stanton, 227 Pa. 55 (supra); Fleckenstein *v.* Fleckenstein, 76 N. J. L. 613 (supra); Cowan *v.* Fairbrother, 118 N. C. 406 (supra); Joyce on Monopolies, § 109.

(*a*) The judge was authorized to hold that the contract above mentioned was not void as being violative of this act.

7. In section 3 of the Clayton anti-trust act, approved October 15, 1914, c. 323, 38 Stat. 731 (9 Fed. Stat. Ann. (2d ed.) 733, U. S. Comp. St. § 8835c), it is declared: " That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." This act relates to transactions whereby a vendor or lessor covenants with his vendee or lessee that the latter shall not buy or lease from such vendor's competitor, and condemns such covenants. The contract under consideration is not of this character, and the judge was authorized to hold that it was not void as violative of this provision of the statute.

8. In *Brown* v. *Jacobs' Pharmacy Co.,* 115 *Ga.* 429 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126), it was held: " The act approved Dec. 23, 1896 (Acts 1896, p. 68), commonly known as the ' anti-trust act,' is unconstitutional, as section 4 thereof, declaring that the provisions of the act

' shall not apply to agricultural products or live stock while in the possession of the producer or raiser,' makes the act repugnant to that provision of the fourteenth amendment of the constitution of the United States which declares that ' No State shall deny to any person within its jurisdiction the equal protection of the laws.' " Even if the act so held to be unconstitutional should be construed as prohibiting a contract of the character involved in this case, it could not be ground for holding the contract to be invalid.

9. The contract reserved the right of J. H. and L. N. Legg to construct brick plants, and consequently it was not a violation of the contract for them or their codefendants to engage in the construction of such a plant.

10. Under the pleadings and evidence the judge was authorized to enjoin temporarily, or until the final hearing of the case, all of the defendants from engaging in the manufacture and sale of brick or other clay products within the described territory; and to this extent the judgment of the trial court is affirmed. But he was not authorized to enjoin them from the mere construction of the Plainville Plant; and to this extent the judgment granting the injunction is reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Gilbert, J., absent.*

No. 2833. AUGUST 16, 1922. REHEARING DENIED SEPTEMBER 20, 1922.

Injunction. Before Judge Tarver. Gordon superior court. September 10, 1921.

On October 26, 1918, J. H. and L. N. Legg, being owners of all of the capital stock (250 shares) in the Legg Brick Company, a private corporation engaged in the manufacture of brick at Calhoun, Georgia, executed a preliminary contract of sale of all the capital stock and assets of the corporation to John M. Stoner. Subsequently on November 8, 1918, the sale was completed by execution of a final contract between the parties, in the course of which reference was made to the preliminary writing, and it was declared to be a part of the contract. The preliminary writing contained the provision: " It is further agreed and understood that both J. H. Legg and L. N. Legg will enter into an agreement binding themselves not to become interested in the manufacture or sale of brick or clay products in a radius of three hundred miles from the location of said plant for a period of ten years." The final contract contained the provision: " The first parties hereby agree that they will not engage in the business of manufacturing or selling brick, or clay products of any kind, within the radius of three hundred miles from Calhoun, Georgia, for a period of ten years from this date, either as manufacturers, dealers, salesmen, stockholders, partners, or employees. The first parties to have the privilege of constructing kilns, buildings, or anything else with brick

at any time or place, or of repairing kilns and machinery." On December 23, 1918, Stoner, the vendee, executed a written assignment of the contract and his rights thereunder, including all the corporate stock, to B. Mifflin Hood. The writing referred specifically to the contract of purchase above mentioned, and contained the following clauses: "2. The said John M. Stoner in making the said contract was acting as the agent of B. Mifflin Hood, and the said B. Mifflin Hood furnished the cash payment of forty thousand ($40,000) dollars which was paid by John M. Stoner to J. H. Legg and L. N. Legg. 3. In consideration of the sum of one ($1.00) dollar to him in hand paid, John M. Stoner hereby transfers, assigns, and conveys to B. Mifflin Hood all of his right, title, and interest in and to the said attached contract between John M. Stoner and J. H. Legg and L. N. Legg, dated November 8th, 1918, together with all of his right, title, and interest in and to the two hundred and fifty (250) shares of the capital stock of the Legg Brick Company. 4. Simultaneously with the execution of this agreement John M. Stoner has executed a separate transfer of each of the certificates representing the said 250 shares of the capital stock of the Legg Brick Co."

Hood disposed of the majority of the stock, and retained 98 shares. While the shares of stock were held as indicated and the business of the corporation in the manufacture of brick was in active operation, Hood instituted suit against J. H. and L. N. Legg, the vendors named in the contract first mentioned, and H. L. B. Legg, Miss E. D. Legg, and Plainville Brick Company. The defendant J. H. Legg was the father of L. N. and H. L. B. Legg and the grandfather of Miss E. D. Legg, a daughter of L. N. Legg; while Plainville Brick Company was a firm name under which it was alleged the individual defendants proposed to carry on business. The suit was to enjoin the defendants from engaging in the business of manufacturing or selling brick or clay products of any kind within the radius of three hundred miles from Calhoun, Georgia, for a period of ten years from November 8, 1918, either as manufacturers, dealers, salesmen, stockholders, partners, or employees, and from proceeding further with the construction of a brick plant at Plainville, Georgia, or elsewhere within the territory just mentioned. The alleged grounds for such relief were, that all of the defendants were engaged in a collusive enterprise

to do the things above mentioned, in competition with the business of the Legg Brick Company, in violation of and notwithstanding the prohibitory clause quoted above from the contract; that such competing enterprise was really organized and fostered by J. H. and L. N. Legg, and the names of the other defendants were used by them in such business as a mere pretext to make it appear that they were not engaged in the enterprise. The defendants filed demurrers and answers. At an interlocutory hearing direct and circumstantial evidence was introduced, which, though conflicting, tended to show all that is stated above, and further: that the vendors, J. H. and L. N. Legg, had founded the Legg Brick Company and operated the plant of that company at Calhoun, Georgia, and built up a large trade in the manufacture and sale of brick, the output of the plant, throughout the adjacent territory lying within the radius of 300 miles from Calhoun, Georgia; that the defendants proposed to erect a plant and engage in the manufacture and sale of brick within the prohibited territory, in competition with the business conducted by the Legg Brick Company, in spite of the above-quoted covenants in the contract of sale to Stoner; and that they did so under pretense that such covenant was void and unenforceable at the instance of Hood. At the conclusion of the evidence the judge enjoined the defendants temporarily from engaging in the manufacture and sale of brick and other clay products as above indicated, and also from constructing the plant which the defendants had commenced to erect at Plainville, Georgia, and within the prohibited territory. To this judgment the defendants excepted.

*M. B. Eubanks, J. G. B. Erwin,* and *Maddox & Doyal,* for plaintiffs in error.

*Bryan & Middlebrooks, A. L. Henson,* and *F. A. Cantrell,* contra.