McAULIFFE *v.* VAUGHAN.

1. Where a person who had been conducting and publishing a newspaper made a contract to sell the property, business, and good will to another person, who was in the employment of the publisher of a different newspaper, such a contract was not freed from the invalidity arising from having been made on Sunday on the ground that selling and buying newspapers was not the ordinary business of either party.

2. Although a contract for the sale of a newspaper outfit and the good will of the business may have been invalid because it was made on a Sunday, yet where possession of the property had been delivered on a week day, before the signing of the contract, to one who, in the original negotiations, was expected to be a copurchaser, but who did not sign the written contract finally executed, though forming a partnership with the purchaser; and where, after the contract was signed, the purchaser retained possession, and (having paid one installment of the purchase-

money when the contract was made) paid the balance in installments on other days than Sunday, and the seller received them without objection because of the time when the contract was signed, the parties thereby ratified such contract, and its terms were enforceable as if it had not been made on Sunday.

3. Where one who had been engaged in publishing a newspaper in a certain county sold the property connected therewith and the business and good will to another and agreed not to conduct, either directly or indirectly, any other newspaper in that county without the consent of the other party, his heirs and assigns, such a contract was not void as being in general restraint of trade or unreasonable in its terms.

4. In such a contract the amount paid by the purchaser furnished a consideration, not only for the transfer of the physical property, but also for the business and good will, and for the agreement of the seller not to conduct another newspaper in the same county.

5. Although the installments of purchase-money may not have been paid on the exact days when they were due under the contract, yet where the seller received them afterward, he could not claim that this was such a breach on the part of the buyer as authorized him to disregard the agreement not to conduct another newspaper in that county.

6. The seller having sold the property and made the contract under seal in his own name, it furnished no defense to a proceeding to enjoin him from conducting another newspaper in the same county, in violation of the contract, to set up that the property which he sold actually belonged to his wife, and that he had no pecuniary interest in it.

FEBRUARY 18, 1911.   REHEARING DENIED FEBRUARY 27, 1911.

Refusal of injunction. Before Judge Lewis. Baldwin superior court. September 28, 1910.

*D. B. & D. S. Sanford* and *Hines & Vinson,* for plaintiff in error.
*Allen & Pottle* and *W. T. Davidson,* contra.

LUMPKIN, J.   W. J. Vaughan and J. C. McAuliffe entered into the following written contract:

"State of Georgia, Baldwin County.

"This indenture, made this the 7th day of March, in the year of nineteen hundred and eight, between W. J. Vaughan, of said State and county, as party of the first part, and J. C. McAuliffe, of Richmond county, said State, as party of the second part, witnesseth: that the said party of the first part agrees to sell to the said party of the second part the following described property, in consideration of the sum of five thousand ($5,000.00) dollars, payable as follows: one thousand ($1,000.00) dollars cash, the receipt of which is hereby acknowledged, at and before the sealing and delivery of these presents; one thousand ($1,000.00) dollars on the 14th day of March; one thousand ($1,000.00) dollars on the 21st day of March, 1908; two thousand ($2,000.00) dollars on the 1st

day of May, 1908; each note bearing interest from date at 8 per cent. per annum.

"Upon the payment of the above-mentioned notes, according to their tenors and effect, the party of the first part agrees to sell to the party of the second part, his heirs and assigns, the newspaper known as the 'Milledgeville News Publishing Company,' together with all the equipment, the title of which is warranted, consisting of one Cincinnati cylinder press and equipment, one Price & Chandler job press and equipment, one Price & Chandler paper cutter, one typewriting machine and equipment, one roller-top desk, and all other furniture and equipment and property of any nature or value connected with said newspaper and office, including the good will and established business of said newspaper and job office, except stationery.

"The party of the first part agrees not to conduct, either directly or indirectly, any other newspaper in the city of Milledgeville, or in the county of Baldwin, without the written consent of the said party of the second part, his heirs and assigns.

"In witness whereof the party of the first part and the party of the second part hereof have hereunto set their hands and seals, in duplicate," etc.

This was signed and sealed by the two parties, and was attested by three witnesses, one of whom was a notary public. On August 10, 1910, McAuliffe filed an equitable petition against Vaughan, seeking to enjoin him from entering into or conducting a newspaper business in the city of Milledgeville and Baldwin county, which it was alleged he was preparing to do, and for that purpose was organizing a company. The defendant contended that the contract was invalid, because, while dated March 7, it was in fact executed on Sunday, March 8; that it was also invalid because it was in restraint of trade; that the $5,000 was paid for the articles of personal property enumerated in the contract, and there was no consideration for the added agreement not to conduct another newspaper in Baldwin county; that the plaintiff did not pay the amounts due promptly at the times when he agreed to pay them, and this amounted to a breach on his part (it was not denied that the entire amount had been paid) ; and that the property was in fact that of his wife, and he had no financial interest in the sale. It is recited in the bill of exceptions that the presiding judge held that

the contract was null and void because executed on the Sabbath day and because it was in restraint of trade. He denied the injunction, and the plaintiff excepted.

The denial of the interlocutory injunction was evidently based, not upon conflicting evidence in regard to controlling issues, but on the idea that the contract was void. The code of this State does not contain any direct statement that contracts made on Sunday are void. That result is generally reached through a consideration of two sections. Section 422 of the Penal Code of 1895 (Penal Code (1910), § 416) declares that "Any person who shall pursue his business, or the work of his ordinary calling, on the Lord's day, works of necessity or charity only excepted, shall be guilty of a misdemeanor." By section 3668 of the Civil Code of 1895 (Civil Code (1910), § 4253) it is declared that "A contract which is against the public policy of the law can not be enforced." It has been held, therefore, that where one in pursuing his business or the work of his ordinary calling on the Sabbath makes a contract, it is invalid, and can not be enforced.

1. It was contended, that, inasmuch as Vaughan's business was carrying on a newspaper, or, as he expressed it in his answer, that of a "printer," and that of McAuliffe was employment connected with another newspaper, the sale and purchase of a newspaper and outfit was not within the ordinary business or calling of either of them. This contention is unsound. In *Morgan* v. *Bailey*, 59 *Ga.* 683, "where a farmer, a part of whose ordinary business was the purchase and cultivation of land, bought a tract of land on Saturday, and agreed to consummate the trade on the next day by signing the necessary papers, and did sign a note for the purchase-money on that day (Sunday)," it was held, "that the contract was illegal, and, in a suit on the note, the courts would not assist in its collection." Thus buying land in bulk for farming purposes was considered to be so connected with the business of farming that such a contract made on Sunday was illegal. It would be a very narrow verbal construction to hold that if one merchant contracted to buy out the stock of another on Sunday for the purpose of continuing the mercantile business, he could say that the contract was not invalid because his business or ordinary calling was to sell at retail, and not to buy entire stocks of goods; or to rule that a manufacturer might proceed on Sunday with the erection of a building

. to be used in connection with his business, on the ground that .manufacturing, not building, was his ordinary business. We think that the contract before us does not escape the test of having been executed on Sunday on the ground that the ordinary business of these two men was not buying and selling newspapers.

2. Assuming that the contract was made on Sunday, the performance of it was carried on between the parties on other days. On a week day prior to the execution of the written contract now sought to be enforced, possession of the property had been delivered to one who, under the original negotiations, was to have joined with McAuliffe in making the purchase, but who did not sign the written contract finally executed (with somewhat different terms), though there was evidence that he formed a partnership with the purchaser. After the contract was signed, McAuliffe proceeded to use the property and carry on the newspaper, and apparently paid Vaughan all the money, except one payment, on other days than Sunday. The latter received the money without any objection or contention that the contract was illegal because executed on the Sabbath. The question is whether, under such circumstances, after the payment of the amount stipulated in the contract, and while the purchaser was in possession of the property and conducting the business, he could enforce the provision of the contract that Vaughan should not conduct another newspaper in Baldwin county; or whether, though one retained the property and the other received on subsequent week days and retained the money, that provision of the contract was not enforceable.

There are two lines of authority on the subject of ratification of contracts made on Sunday. One class of decisions holds, that, if the contract was void because made on Sunday in connection with the business of one of the parties, it could not become valid by subsequent ratification. The other class holds, that the illegality which infects such a contract is not general in its character; that it does not consist in any wrong or impropriety in the contract itself, but simply in the time of its making.; that if it were a contract which would be valid if made on a week day and both parties recognize it on such a day, after it is made, and proceed to carry it out, they thereby ratify the contract, and purge it of the illegality arising from the time when it was entered into. See Adams v. Gay, 19 Vt. 358; Sumner v. Jones, 24 Vt. 317 (7 Am. & Eng. Ann. Cases,

634, and note). Though there may be some preponderance of authority against ratification, this court has taken its stand with those courts which hold in favor of the doctrine, at least where the parties on a subsequent day proceed to carry out a contract made on Sunday. *Meriwether* v. *Smith,* 44 *Ga.* 541; *Bryant* v. *Booze,* 55 *Ga.* 438 (6), 448. Following these decisions, the uncontradicted evidence showed a ratification, and the parties were bound as if the contract had been signed on a day other than Sunday.

3. It was contended that the contract was invalid, because it was in restraint of trade. The code declares that contracts "in general in restraint of trade" can not be enforced. Civil Code (1895), § 3668 (Civil Code (1910), § 4253). This section was a codification of the antecedent law, not a new enactment. As early as 1851 it was held in the case of *Holmes* v. *Martin,* 10 *Ga.* 503, that "A contract in general restraint of trade is void; but if in partial restraint of trade only, it may be supported, provided the restraint be reasonable and the contract founded on a consideration." In that case an owner of a town lot sold it to another, with a restriction contained in the deed that the house and lot should not to be used for tavern purposes. In *Ellis & Palmer* v. *Jones & Co.,* 56 *Ga.* 504, it was recognized that where a merchant sold his stock of goods and good will, and agreed not to do business in the town where the stock was located, this was an enforceable contract. In *Goodman* v. *Henderson,* 58 *Ga.* 567, a contract to retire forever from the business of purchasing in the Savannah market green hides, sheepskins and hides, and skins dried by butchers, and that the parties so agreeing would use their influence in favor of the other party to the contract, to whom they transferred their good will, for a valuable consideration, was held not an illegal contract as being in general restraint of trade. A distinction was drawn between a contract unlimited as to territory, and therefore territorially general, and one unlimited as to time. See also *Brewer & Co.* v. *Lamar, Rankin & Lamar,* 69 *Ga.* 656 (47 Am. R. 766); *Bulloch* v. *Johnson,* 110 *Ga.* 486, 492 (35 S. E. 703); *Seay* v. *Spratling,* 133 *Ga.* 27, 29 (65 S. E. 137).

In *Rakestraw* v. *Lanier,* 104 *Ga.* 188 (30 S. E. 735, 69 Am. St. R. 154), two physicians formed a partnership, and it was agreed by one of them that, in the event the firm should at any time be dissolved, he would not locate or engage in the practice of medi-

cine, surgery, or obstetrics in the town where the two partners resided, or at any place within a radius of fifteen miles of the drugstore of the other partner, without first obtaining the written consent of such other. It was held, that "A contract in restraint of trade, unlimited as to time and the enforcement of which literally as made would, in certain contingencies likely to arise and which must necessarily have been in contemplation of the parties, result in needlessly oppressing one of them without affording any corresponding benefit or protection to the other, is unreasonable and should not be enforced." In the opinion a distinction was drawn between cases in which property and the good will of a business were sold and those in which a covenant was made between professional men, where no property or property rights were conveyed in the contract which imposed the restriction. It was held that the contract there involved was in partial restraint of trade, but that its terms were unreasonable.

In the case now under consideration there was a sale of property, an established business, and the good will connected with it. The vendor agreed not to enter into the same character of business in the county where the newspaper sold was published, although there was no limitation on the time of such restriction. Under the decisions cited, this contract was not invalid as being in general restraint of trade or unreasonable.

4-6. The judge of the superior court apparently rested his refusal to grant an injunction on the ground that the contract was invalid because made on Sunday and in general restraint of trade. As the judgment will be reversed, we may state that the other contentions of the defendant were entirely without merit. The sale of the newspaper property and good will and the agreement not to conduct another newspaper in the same county were parts of one contract and were covered by the consideration thereof. *Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (2), 203 (51 S. E. 436).

Although the purchaser may not have paid the agreed amounts promptly at the time fixed by the contract, yet the vendor could not accept them later, put the money in his pocket, break the obligation imposed on him by the contract, and set up by way of defense that the payments were slow.

Vaughan contracted in his own name, under seal. When an injunction was sought against him to prevent his violating his con-

tract not to conduct another newspaper in Baldwin county, it furnished no defense to him to say that the property which he sold was really the property of his wife.

*Judgment reversed. All the Justices concur.*