## MOYNIHAN ET AL. *v.* ROCKHILL.

[No. 9,125. Filed October 4, 1916.]

CONTRACTS.—*Validity.*—*Salary of Public Official.*—*Assignment.*— *"Pooling."*—Where A and B, owners of a majority of the capital stock of a newspaper publishing company to the management of which each devoted all of his time, entered into an agreement immediately prior to A's acceptance of an offer of an appointment to the position of postmaster, which would require all his time, whereby B undertook to perform the services previously rendered

the newspaper company by both parties and in consideration therefor A agreed to pay B a sum equal to one-half his salary as postmaster, such agreement is not invalid or illegal as being an assignment of either an earned or an unearned salary of a public officer, or a pooling of A's salary of postmaster with the income of the newspaper company.

From Allen Superior Court; *David E. Smith*, Special Judge.

Action by William W. Rockhill against Andrew J. Moynihan and another. From a judgment for plaintiff on his demurrer to the answer, the defendants appeal. *Reversed.*

*Barrett, Morris & Hoffman*, for appellants.

*Thomas & Townsend* and *Samuel L. Morris, Jr.*, for appellee.

McNUTT, J.—This was a suit, in the court below, by appellee, Rockhill, against appellant to recover one-half of $1,430.76, for postage refunded by the United States government to the appellant, Journal-Gazette Company. To the complaint the appellant, Journal-Gazette Company, filed a counterclaim, and both appellants answered the complaint by their separate and several set-off. Appellee's demurrer was sustained to said answer of set-off, and this is the only error relied upon for reversal.

The answer of set-off reads as follows: "For a second and further paragraph of answer by way of set-off to the plaintiff's complaint the defendants separately and severally say, they admit that the Journal-Gazette Company collected $1,430.76 of overpaid postage from the United States Government in the year 1913; that the plaintiff and the defendant, Moynihan, were the owners of a majority of the capital stock in the Journal Company; that the Journal Company is a corporation organized under the laws of the State of Indiana; that the

plaintiff and defendant, Moynihan, together held
a majority of said stock and an equal amount of
said stock was owned by each of them; that the
Journal-Gazette Company is a corporation organized
under the laws of the State of Indiana, and has
assigned to it all the rights, property and securities
belonging to the Journal Company and said Journal-
Gazette Company has assumed all indebtedness of
said Journal Company; * * * that the de-
fendant, Andrew J. Moynihan, purchased the
capital stock of this plaintiff in the Journal Company
in 1903, and at said time there was due the Journal
Company the said sum of $1,430.76 as over-paid
money for postage from the United States Govern-
ment, and at the time said Moynihan purchased
said Rockhill's interest in said Journal Company
there was due the Journal Company the sum of
$1,430.76 from the said United States Government.
That the Journal-Gazette Company now owns all
the property formerly owned by the Journal Com-
pany and that all of said property formerly owned
by the Journal Company was assigned to the
Journal-Gazette Company in the year 1907. That
it collected in the year 1913, from the United States
Government the said sum of money, to wit:
$1,430.76. ' Defendants further say that the Journal
Company was organized under the laws of the State
of Indiana for the purpose of publishing a demo-
cratic daily and weekly newspaper in the city of
Fort Wayne, Indiana, and that said Journal Com-
pany did publish a democratic daily and weekly
newspaper from the time said company was in-
corporated, May 13th, 1884, until the year 1907,
when the Journal-Gazatte Company was incorpor-
ated under the laws of the State of Indiana; that
said Democratic daily and weekly newspaper was
then published by said Journal-Gazette Company

from said date and is still being published by said company. That after the political campaign of 1892 and after the election of the Honorable Grover Cleveland as president of the United States and after the election of the Honorable William F. McNagny of Columbia City as the Congressman from the Twelfth District of Indiana, the said McNagny offered to recommend the plaintiff herein to be nominated and appointed postmaster of the United States Post Office in the city of Fort Wayne; that at said time the said plaintiff and defendant, Moynihan, were the owners of the capital stock of said Journal Company and were both giving their entire time to the publication of its newspaper. That at that time and for a long time prior thereto the Journal Company had been handicapped by lack of sufficient moneys to properly operate its business; that it was struggling financially to succeed and was requiring new machinery and new equipment in order to successfully print its newspapers; that the successful publication of daily and weekly newspapers of said Journal Company and the caring for the printing of said company demanded the sole attention of both the plaintiff and defendant, Moynihan; that at the time when the said McNagny offered to recommend said Rockhill as postmaster for said post office in said city of Fort Wayne the said Rockhill, plaintiff herein, agreed with the defendant, Moynihan, that if said Moynihan would take sole charge of the property of the Journal Company and would manage the printing and the publication of its newspapers and in addition thereto would give to said plaintiff, Rockhill, one-half of the earnings of said Journal Company, that he, Rockhill, would accept the offer of said McNagny and become postmaster of the United States post office at the

city of Fort Wayne, Indiana, and would pay the
defendant, Moynihan a sum equal to one-half of
the money received by him as salary as postmaster
of the city of Fort Wayne, Indiana. That said
agreement was then made and entered into by and
between said Rockhill and said Moynihan and in the
furtherance thereof said Rockhill was appointed
postmaster of the United States post office at Fort
Wayne, Indiana, and took his position as such
postmaster on the 19th day of July, 1893, and held
said office continuously for four years until July
19th, 1897; that during said time the said Rock-
hill drew salary as such postmaster in the sum
of $12,800 or $3,200 per year; that the defendant,
Moynihan, carried out the agreement above re-
ferred to and operated said Journal Company's
newspaper plant for said 4 years and gave to said
Rockhill earnings on his stock without making any
charge for doing the work of himself and Rockhill
combined, but that the said plaintiff, Rockhill,
failed and refused to carry out his side of the
agreement and did not and never has paid to said
defendant any moneys as representing the sum
equal to one-half of the money received by Rockhill
as salary as postmaster of said city of Fort Wayne,
and that as a result of said agreement there is due
the said Moynihan from said Rockhill the sum of
$6,400.00; that said Moynihan has assigned all
his rights, title and interests in and to said amount
of money or claim from said Rockhill to the Journal
Company, codefendant herein. That on the 3rd
day of June, 1913, the said Journal-Gazette Com-
pany made a demand upon said plaintiff that he
pay it said sum of money and that the said Rock-
hill, the plaintiff herein, has refused to make such
payment. Wherefore, defendant, Journal-Gazette

Company, prays the court that it may have judgment against said plaintiff for said sum of $6,400.00 and the interest thereon allowed by law and for all other proper relief in the premises."

Appellee demurred to said answer for want of sufficient facts to constitute a defense to the complaint, for the following reasons: (1) "That each of said separate and several paragraphs of answers of the defendants is scandalous; that each sets up an unlawful agreement on the part of the defendants, Andrew J. Moynihan and the Journal-Gazette Company to procure an office for the plaintiff in consideration that plaintiff would share with said defendants the salary of said office or an equal amount to one-half of the salary of said office." (2) "That each of said separate and several paragraphs of answers of said defendants sets up an unlawful and illegal agreement and one against public policy in this: That each of said paragraphs sets up that said defendants were to participate in one-half of plaintiff's salary as postmaster, under the Federal Government in the city of Fort Wayne, during Grover Cleveland's administration, or an amount equal to one-half of plaintiff's salary as postmaster, as a consideration for said defendants' procuring for said plaintiff the appointment of postmaster at the city of Fort Wayne, under said Grover Cleveland and through the Congressman of the Twelfth District, William W. McNagny." (3) "That each of said separate and several paragraphs of answers of said defendants sets up that which is unlawful and void and against public policy in this: That said defendants, because of their efforts on behalf of Grover Cleveland's election as President of the United States, and the election of William F. McNagny, Congressman to the United States Congress from the Twelfth District of Indiana, and in consideration

for their services in the election of said President and said Congressman, and in consideration that said defendants would procure said president and said congressman to appoint this plaintiff postmaster at the city of Fort Wayne, that said defendants were to participate in said plaintiff's salary, or an amount equal to half his salary as such postmaster."

Appellee contends that the contract between appellee and Moynihan, as disclosed by said answer, is against public policy and void, and his counsel assume in the argument that the contract amounts to an agreement to assign a part of appellee's salary as postmaster, before the salary was earned, and an agreement to pool the salary with the income of the Journal Company. Appellee is well supported by the authorities upon the legal propositions for which he contends. The courts have uniformly refused to enforce agreements to assign the salary of a public officer before the same was earned. We deem it unnecessary to set out the reasons for such refusal, in view of our construction of the agreement set out in appellants' answer of set-off.

This answer discloses, in substance, that appellee Rockhill and said Moynihan were the owners of the capital stock of the Journal Company in equal proportions; that each was contributing all of his time to the publication of a newspaper and the conduct of the other business of the corporation; that appellee was offered the office of postmaster at Fort Wayne, which would require all of his time; that Moynihan agreed to perform the work for their company theretofore performed by both of them, and, in consideration therefor, appellee agreed to pay said Moynihan a sum equal to one-half of his salary as postmaster.

The demurrer admits the facts alleged in the answer to be true. We do not think that counsel

for appellee are warranted in assuming, as they do, that the answer shows an assignment to either an earned or an unearned salary of a public officer, or that it shows a so-called pooling of appellee's salary as postmaster with the income of the Journal Company. The salary is only incidentally referred to in the agreement, and the amount of it merely serves to fix the amount which appellee agreed to pay to Moynihan. If the agreement had been that the Journal Company should have appellee's salary, the same to become a part of the assets of the Journal Company, a wholly different question would be presented for our consideration, but an agreement by appellee to pay Moynihan a sum equal to one-half of his salary did not give Moynihan or the Journal Company any interest in the salary, but left appellee free to draw his salary and use it as he saw fit. *Tron* v. *Lewis* (1902), 31 Ind. App. 178, 66 N. E. 490. We find nothing in the agreement which even tends to show that said Moynihan or the Journal Company had anything to do with procuring the office of postmaster for appellee, or with procuring the election of the congressman, or the President, or that the salary was to be divided in consideration for any such services. Appellee has set out in his memoranda no reason, in our opinion, why appellants' answer of set-off is not good, and we are of the opinion that the answer is good as a set-off against appellee's complaint, and that the court erred in sustaining the demurrer thereto.

The cause is reversed, with directions to the court below to overrule appellee's demurrer to the answer of set-off, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 113 N. E. 734. Assignment of unearned salary of public officers, validity, notes 5 L. R. A. (N.S.)567; 9 Cyc 495.