## 19292. GLASS v. HARWELL.

DECIDED OCTOBER 3, 1929.

*Taylor Smith, Alfred C. Broom, Dean J. Ratliffe,* for plaintiff.
*W. C. Munday, G. H. Cornwell,* for defendant.

PER CURIAM. According to the petition, the alleged indebtedness declared on accrued during two terms served by the plaintiff as deputy marshal of the City of Atlanta. To recover the same the plaintiff sued upon two pre-election contracts alleged to have been made between him and the defendant in different election years, by the terms of which the defendant would become a candidate for the office of marshal and the plaintiff would run on the ticket with

him as deputy, with the understanding that the plaintiff would pay half of the expenses of the campaign, and that in case of the defendant's election the defendant would appoint the plaintiff as his deputy, and give to the plaintiff enough of his salary to equalize the two salaries payable to them by law or ordinance as such officers. The plaintiff in his petition, however, speaks of the contract in the singular, and evidently refers to the original agreement made prior to the election in 1917 and renewed verbally from time to time in succeeding election years.

Such contract was illegal and contrary to public policy, in that it tended to hamper or restrict the defendant in the due performance of his public duty to appoint a suitable deputy to serve with him in case of his election. *Andrews* v. *Richardson,* 32 *Ga. App.* 687, 691 (124 S. E. 378); Connor *v.* Canter, 15 Ind. App. 690 (44 N. E. 656); Hager *v.* Catlin, 18 Hun, 448; Baskett *v.* Moss, 115 N. C. 448 (20 S. E. 733, 48 L. R. A. 842, 44 Am. St. R. 463); O'Rear *v.* Kiger, 10 Leigh (Va.), 622; Hortsman *v.* Adamson, 101 Mo. App. 119 (74 S. W. 398); 13 C. J. 440.

Whether the agreement was otherwise tainted with illegality need not be decided. Since it was void for the reason stated, the courts will not lend aid to the enforcement of any of its executory features. Compare *Pale* v. *Newsome,* 167 *Ga.* 867 (147 S. E. 44). The petition discloses no post-election contract. The subsequent conduct of the parties could not amount to a validation of the original agreement. A contract which is contrary to public policy can not be made valid by renewal or ratification, nor can the plaintiff recover because he has performed his obligations under such agreement (13 C. J. 506, 6 R. C. L. § 216, p. 820), although the rule seems to be otherwise in this State as to a contract having no unlawful purpose and objectionable only because made on a prohibited day; as, an agreement entered into on the Sabbath contrary to penal statute and afterwards performed by the party claiming a recovery thereon against the other. *Meriwether* v. *Smith,* 44 *Ga.* 541; *Hayden* v. *Mitchell,* 103 *Ga.* 431 (3) (30 S. E. 287); *Mc-Auliffe* v. *Vaughan,* 135 *Ga.* 852 (2), 856 (70 S. E. 322, 33 L. R. A. (N. S.) 255, Ann. Cas. 1912A, 290); *Jones* v. *Belle Isle,* 13 *Ga. App.* 437 (79 S. E. 357).

Nor can the petition be sustained on the theory of an indebtedness on an implied contract. Whether the plaintiff would have been

entitled to rely upon an implied promise on the part of the defendant arising out of the subsequent conduct of the parties, including the plaintiff's performance, the petition can not be construed as seeking a recovery upon any such theory. Indeed, the able counsel for the plaintiff in error do not suggest any such construction of the petition.

The petition failed to set forth a cause of action and was properly dismissed on general demurrer.

*Judgment affirmed. Jenkins, P. J., and Bell, J., concur. Stephens, J., dissents.*

STEPHENS, J., dissenting. I can not concur in the opinion of my colleagues. Since it is alleged in the petition that the plaintiff "ran on [the defendant's] ticket" and promised to pay half of the campaign expenses, and that they "were elected" upon every occasion when they were candidates for these offices, and that after each election the plaintiff became installed in office as deputy marshal and the defendant as marshal, and since it is a fact, of such public notoriety that a court can take judicial cognizance thereof, that no one "runs" as deputy or assistant "on the ticket" of a candidate for an elective public office unless the candidate, in the event of election to that office, would have the right to appoint, as his deputy or assistant in the office, the person "running on his ticket," the petition must be taken as if it alleged that, as a part of the consideration of the contract between the defendant and the plaintiff as candidates, the defendant, in the event of his election to the office of city marshal, would appoint the plaintiff to the position of deputy marshal, and did so appoint him, and that the plaintiff agreed to serve.

Nowhere in the petition is there alleged an express post-election agreement. The petition simply discloses a suit predicated upon the defendant's promise to pay a portion of his salary to the plaintiff. If, under the facts alleged in the petition, there arises out of them by implication a post-election promise by the defendant to pay a portion of his salary to the plaintiff, the plaintiff, in predicating his suit simply upon the defendant's promise to make this payment, can rely upon whatever contract arises out of the facts alleged, whether upon the promise sued on as being a pre-election promise or upon the same promise re-affirmed by implication after the election. *Western Union Tel. Co.* v. *Harris,* 6 *Ga. App.* 260

(2) (64 S. E. 1123). If under the facts alleged the pre-election agreement, upon the subsequent performance of any of its promised undertakings, has become functus officio, and if the facts show a new agreement, with the defendant's promise to pay a portion of the salary of his office imported into it, the petition will be construed as declaring upon the new contract which arose after the election. *Jackson* v. *Buice*, 132 *Ga.* 54 (63 S. E. 823).

Where, after the election, the plaintiff had performed all of his pre-election undertakings by having run on the defendant's ticket, and having accepted from the defendant the appointment as deputy marshal, made by the defendant, and having rendered service in the defendant's office as deputy marshal, and having paid a portion of the defendant's campaign expenses as the plaintiff had agreed to do, and where the defendant had performed his pre-election promise by appointing the plaintiff to the deputyship, it should be taken, in the absence of any agreement or understanding between the parties to the contract, that they, in thus putting into execution their pre-election promises, intended to perform in the terms of the pre-election agreement and understanding, but with the implied agreement and understanding by both parties that the defendant would give a designated portion of his own salary as marshal to the plaintiff during the latter's term of service as deputy marshal. This constituted a new contract entered into after the election, by which all the pre-election promises of the plaintiff became executed by performance, in consideration of the defendant's promise to pay a portion of his official salary to the plaintiff while the latter served as the defendant's deputy. Thus was the defendant's promise to pay a portion of his salary to the plaintiff renewed by implication after the election, and for a post-election consideration.

Assuming, however, that the petition alleges that the plaintiff's right to recover is based solely on the defendant's pre-election promise to pay a portion of his official salary to the plaintiff, the post-election execution by both parties of all of their other pre-election undertakings brings the pre-election promise of the defendant to pay a portion of his official salary to the plaintiff over into the post-election environment. The validity of this promise, as tested by its consideration, must be determined not by the character of the pre-election promises by the plaintiff, given as its consideration, but by the character of the post-election execution of the pre-election prom-

ises in consideration of which the defendant's pre-election promise to pay a portion of his official salary to the plaintiff is by implication renewed after the election. If the consideration for the defendant's pre-election promise was illegal, and for this reason constituted no valid consideration, and the defendant's promise was therefore unenforceable, the defendant's promise might be considered as only an outstanding offer continuing until after the election, and which was then accepted by the plaintiff's execution of his promissory undertakings which he had made before the election.

Although the defendant's pre-election promise to pay to the plaintiff as deputy marshal a portion of the defendant's salary earned by the defendant as marshal was imported into, and renewed by implication in the post-election agreement, the post-election agreement nevertheless constitutes a new contract which is separate and distinct from the previous pre-election agreement, and constitutes no part of it, and is a contract by which the defendant, for a new consideration, viz., the actual performance by the plaintiff of all his pre-election undertakings, renews by implication his pre-election promise to give a portion of his salary as marshal to the plaintiff. The defendant's post-election promise to pay a portion of his official salary to the plaintiff, being given for a new consideration, is not founded upon the pre-election agreement and does not arise out of it, and is therefore not contaminated or invalidated by any invalidity or illegality inhering in the previous pre-election agreement.

By the weight of authority a pre-election agreement by which a candidate for public office agrees, in the event of his election, to appoint a designated person as his official deputy, is void as being in contravention of public policy and therefore unenforceable. Elliot on Contracts, p. 60, and cases cited. The Court of Appeals of Kentucky, however, in Mullikin v. Miles, 204 Ky. 541 (264 S. W. 1086), has upheld the validity of such a contract. The theory upon which such an agreement is held to be unenforceable as being in contravention of public policy is that it amounts to a bargain and sale of a public office in consideration of the political support and influence of the prospective appointee and his friends, and also operates to restrict and hamper a public official in the free performance of an official duty. Such a contract, being illegal and unenforceable, can be repudiated with impunity by either party

after the election. The failure of either party to comply with his promised undertaking would afford no cause of action to the other. It does not follow, however, that where two persons have entered into an illegal and unenforceable executory agreement with respect to the appointment by one of them, as a public official, of the other to an official position, the former, in actually making the appointment of the person promised, is constrained in so doing by virtue of the previous illegal agreement, which he was free to repudiate without legal responsibility. It does not follow that, in making the promised appointment, the official appoints an incompetent and inefficient person and thereby fails, in the performance of his official act, to act in the public interest. Nor does it follow that the appointee's acceptance of the appointment constitutes an illegal act. The execution of the previous illegal and unenforceable executory agreement by the actual appointment to office, and the acceptance of the office by the appointee, are perfectly legal acts, and, being legal, they can not be invalidated by reason of any illegality in the preceding executory agreement. If the actual appointment and acceptance are legal acts, and if there is nothing illegal or in contravention of public policy in the promise to pay, or in the actual payment, by the appointee of a portion of the appointing officer's campaign expenses, and if the promise of the latter to pay a portion of his official salary to his appointee, during the latter's term of service, is also not illegal and not in contravention of public policy, the new post-election contract, which is entirely divorced from the previous illegal agreement, is legal and enforceable and the post-election implied promise of the appointing officer to pay a part of his official salary to the appointee during the latter's term of service as the former's official deputy, is not in contravention of public policy, and is therefore a valid and legally enforceable undertaking.

There are authorities to the effect that a promise which was void when made can not afterwards be given validity by repetition or reaffirmance by its incorporation into a new contract. This certainly would be true if the promise, when reaffirmed and incorporated into the subsequent contract, is still tainted with illegality. It would seem to be a sound legal doctrine, however, that if the promise when originally made was illegal, not by reason of any illegality inhering in the promise itself, but only by reason of the consideration for which the promise was given, it would be

purged of this illegality where it is afterwards incorporated into a new contract and is made for another and a valid consideration. In the case of *Meriwether* v. *Smith*, 44 *Ga.* 541, the Supreme Court of this State held that "when a contract for labor was entered into on the Sabbath, and the contract was performed afterwards by the laborer, . . the promisor can not defend by setting forth the illegality of the contract." The doctrine of this case was afterwards approved in *McAuliffe* v. *Vaughan*, 135 *Ga.* 852 (supra). In that case it was stated by Mr. Justice Joseph Henry Lumpkin, with reference to contracts made on Sunday, that "one class of decisions holds, that, if the contract was void because made on Sunday in connection with the business of one of the parties, it could not become valid by subsequent ratification. The other class holds, that the illegality which infects such a contract is not general in its character; that it does not consist in any wrong or impropriety in the contract itself, but simply in the time of its making; that if it were a contract which would be valid if made on a week day and both parties recognize it on such a day, after it is made, and proceed to carry it out, they thereby ratify the contract, and purge it of the illegality arising from the time when it was entered into [citations]. Though there may be some preponderance of authority against ratification, this court has taken its stand with those courts which hold in favor of the doctrine, at least where the parties on a subsequent day proceed to carry out a contract made on Sunday."

In Williston on Contracts, § 1758, it is stated that "It may sometimes happen that a contract is illegal when it is made either because of the illegal purpose of the parties to the contract or for other reasons, and that when the contract is performed the transaction has become lawful either because the purpose of the parties has changed or because changes in the law or other external circumstances have made that lawful which was previously unlawful. It does not impair the validity of a sale when made that the prior contract to make it was illegal." In the same work, in section 1707, it is stated that "frequently an agreement made on Sunday is subsequently recognized, adopted, or ratified by the parties either expressly or by necessary implication, as for instance by carrying out on a secular day some portion of the contract made on a previous Sunday. The effect of such subsequent recognition has not been regarded in the same way in all jurisdictions, but much of the

difference of opinion is due to various views on other matters than on the fundamental principles of ratification of an illegal contract. The great weight of authority supports the proposition that a contract made on Sunday in violation of law, like other illegal contracts, is incapable of ratification in the proper sense of that word. There is no objection, however, to making on a secular day a contract the terms of which had previously been arranged on Sunday, and the fact that the parties purported to come to a binding agreement on Sunday can not lessen the validity of their subsequent renewal of assent to the bargain, and this assent may clearly be found in acts as well as in words."

In Stout v. Ennis, 28 Kan. 706, it was held that, notwithstanding the invalidity as being in contravention of public policy of a pre-election promise by a candidate for political office to appoint a particular person as his official deputy in the event of the candidate's election, a post-election agreement between the parties by which the elected candidate renewed this promise and promised out of his salary additional compensation to his contemplated deputy would not necessarily be illegal and unenforceable by reason of the invalidity, as in contravention of public policy, of the former agreement. See Armstrong v. Toler, 11 Wheat. (U. S.) 258 (6 L. ed. 468).

As far back as the time of Salkeld's Reports, about the beginning of the eighteenth century, it was held that an officer could legally contract to pay his deputy out of the fees and emoluments of his office. In Godolphin v. Tudor, 2 Salk. 468, it was stated that "if the principal made a deputation, reserving a lesser sum out of the salary, it is good; so if the profits be uncertain, arising from fees, if the principal make a deputation, reserving a sum certain out of the fees and profits of the office, it is good; for in these cases the deputy is not to pay, unless the profits rise to so much; and though a deputy by his constitution is in place of his principal, yet he has no right to the fees, they still continue to be the principal's; so that as to him, it is only reserving a part of his own and giving away the rest to another." This judgment was afterwards affirmed in the House of Lords. 1 Bro. P. C. 101. This rule seems to have been subsequently recognized by statute in England. See 49 Geo. 3, c. 126. This, however, was since our adopting act. See also Foott v. Bullock, 4 U. C. Q. B. 480. It is also recognized in

Georgia. The Supreme Court of Georgia, in *Bynum* v. *Knighton,* 137 *Ga.* 250 (73 S. E. 400, Am. Ann. Cas. 1913A, 903), held that a sheriff may legally contract to pay his deputy, for the discharge of the duties of the deputy, out of the fees and emoluments of the office which belong to the sheriff. In that case the court said: "The sheriff's emoluments are from fees for specific services. An agreement to pay a deputy out of the fees and profits of the office is not opposed to the common-law inhibition of farming out or sale of offices. Our statute (Penal Code of 1910, § 285), declaring it to be illegal for any officer to sell or farm out his office, is substantially a re-enactment of the old English statute of 5 & 6 Edward VI, c. 16. Under this statute the English courts held that when a principal on appointing a deputy takes an agreement for the payment to the principal of a gross sum which is not to come out of the profits of the office, the contract is void; but where he reserves a part of the fees of the office, which is to come out of the profits, the contract is good, because the whole belongs to him, and he is only reserving a part of his own and giving away the balance to his deputy." Citing Godolphin *v.* Tudor, 2 Salk. 468. ·

In Thurston *v.* Fairman, 9 Hun (N. Y.), 584, it was held that an agreement between partners that "all salaries, perquisites and earnings received by either partner from any office or employment, is the property of the firm, and shall be accounted for and paid into the funds of the firm as soon as received, in the same manner as though it was received from the debtors of the firm," did not constitute an assignment of the unearned salary of a public officer. In that case it does not appear that any member of the firm held a public office or expected to hold one. The distinction is drawn between an assignment by a public officer of his unearned salary, which is against public policy, and an agreement to dispose of the salary, or part of it, after it has been collected. The court in that case said: "In the case of an assignment of a salary unearned and to become due, the officer has anticipated his compensation; hence the inducement to faithfulness in his public duties is greatly impaired and enfeebled. That which produces this result is unlawful, being against public policy. But the case in hand is not that of an assignment of an unearned salary, when all control over the expected funds, even to their reception in the first instance, is passed over to another. It is but an agreement as to the manner in which

the salary shall be employed or disposed of when earned and paid. The parties took upon themselves an obligation, that is, bound themselves one to the other, as to the manner in which salaries, perquisites, etc., received by them respectively should be applied or employed when received."

The Supreme Court of Indiana, in Cheek v. Tilley, 31 Ind. 121, and the Supreme Court of Minnesota, in Pioneer Printing Co. v. Sanborn, 3 Minn. 413, held that an officer may legally, out of his fees derived from the office, pay his deputy compensation for services.

The Supreme Court of Appeals of West Virginia, in Shinn v. Shinn, 78 W. Va. 44 (88 S. E. 610, L. R. A. 1916E, 618), held that an agreement between two brothers, who were partners in business, made after one of the brothers had been elected sheriff, that all the expenses of the office, including the election expenses, were to be paid from the partnership fund, and that the profits arising from the office and from the business were to be placed in a common fund to be equally divided between the brothers, was not a contract by which the partner who was sheriff sold the office or farmed it out to his brother, who had no interest in it, or by which the brother acquired any interest in the office.

The Court of Appeals of Indiana, in Moynihan v. Rockhill, 62 Ind. App. 685 (113 N. E. 734), held that an agreement made between the owners of stock in a newspaper, to the business of which each had contributed his time, that one of them, who was to be appointed postmaster, should pay to the other, who would perform the work upon the newspaper previously performed by both and in consideration therefor, a sum of money equal to one half of his salary as postmaster, does not constitute an assignment of the salary of a public official, or the pooling of his salary as postmaster with the income of the newspaper. The court emphasized the fact that the person who was to be postmaster had only promised to pay a sum of money in consideration of the additional services of the other person, which was determinable by the salary which the former would receive as postmaster, and that, so far as the contract was concerned, the salary was to be collected by the person entitled to receive it as postmaster, and, after it had been received by him, he, under the terms of the contract, was to pay his own money to the other contracting party.

The Supreme Court of Kansas, in Stout *v.* Ennis, 28 Kan. 706 (supra), held that a post-election contract by which a public official agreed to employ the other person as his official deputy during the term of office, and pay him for his services a designated portion of the net salary and fees of the office, was not a sale or farming of the office, and was not illegal and void as against public policy.

The authorities relied upon by counsel for the defendant do not conflict with any of the foregoing, and are clearly distinguishable therefrom.

The Supreme Court of Appeals of West Virginia, in Stephenson *v.* Salisbury, 53 W. Va. 366 (44 S. E. 217), held that a contract by which a sheriff exacted of a jailor, who was subject to his appointment, a certain portion of the compensation paid the jailor by the county as the sheriff's price for permitting the jailor to remain in office, was a contract for the sale by the sheriff of the office of jailor and was therefore void and not enforceable. This is clearly distinguishable from a contract by which a sheriff out of his own official salary pays the jailor for services rendered.

In *Grant* v. *McLester,* 8 *Ga.* 553, the suit was on notes which had been executed as part of a contract by which the clerk of the inferior court had agreed that his deputy should have the emoluments of the office, and in consideration therefor would pay to the clerk a designated sum. of money out of the profits of the office, the payment of which sum was secured by the deputy's notes to the clerk. The Supreme Court held that the notes sued on were obligations to pay the sum agreed upon, in all events, and not alone out of the profits of the office, and were "void as against the statute forbidding the sale of public offices, and as opposed to the policy of the law."

The Supreme Court of Alabama, in Robertson *v.* Robinson, 65 Ala. 610 (39 Am. R. 17), held void, as being against public policy, a contract by which a candidate for the office of tax-collector agreed that, in the event of his election, he would appoint another person as his chief deputy and pay him a stated salary from the fees and perquisites of the office if the latter would become his official bondsman and perform all the duties of the office except such as related to the assessment of poll taxes. This contract contained not merely an agreement by the candidate to make an

appointment to fill an office provided by law where the appointee would draw only the compensation fixed by law, but contained a provision by which the candidate would in the event of his election relinquish the duties of the office to another, who would receive, from the official elected to fill the office, compensation out of his private funds derived from the fees and perquisites of the office. This contract amounted to a virtual abandonment of the office by the person elected thereto and legally entitled to fill it, to another. It constituted a sale of the office, and was clearly illegal and against public policy.

The Supreme Court of Michigan, in Anderson v. Branstrom, 173 Mich. 157 (139 N. W. 40, 43 L. R. A. (N. S.) 422, Ann. Cas. 1914D, 817), by a divided court, held that a contract between two attorneys who were practicing law as partners, and one of whom had been elected to the office of prosecuting attorney, which provided that the proceeds derived from the partnership, including the salary received by one of the parties as prosecuting attorney, should be equally divided between them, was invalid as being an attempted assignment of a part of a salary before it was earned. The court in that case apparently overlooked McGregor v. McGregor, 130 Mich. 505 (90 N. W. 284, 97 Am. St. R. 492), a prior decision of that court, in which it was held that an agreement by a public official that his unearned salary shall become the assets of a partnership of which he is a member is not an assignment of an unearned salary by a public official, but is "rather an agreement as to the manner in which the salary should be disposed of when earned and paid," and is not against public policy.

The promise of the defendant which is the basis of this suit is a post-election promise to pay a portion of his salary as marshal to the plaintiff, and was given for a valid and legal consideration, and is itself legal and valid. Its enforcement, therefore, is not in contravention of public policy.

The plaintiff is entitled to recover for the period during which he actually served as deputy. The case of *Andrews* v. *Richardson,* 32 *Ga. App.* 687 (supra), is distinguishable, as there it was held that a deputy under a contract with a public official could not, where the deputy had been discharged before the expiration of the term of the contract, recover the value of the unperformed contract. That case did not involve the right to compensation for services actually performed.

I am of the opinion that the petition set out a cause of action, and that the court erred in sustaining the general demurrer thereto.