## LANE DRUG STORES, Inc., v. COX.*
### No. 7010.

Circuit Court of Appeals, Fifth Circuit.
Dec. 7, 1933.

E. Clem Powers, of Atlanta, Ga., for appellant and cross-appellee.

*Rehearing denied January 13, 1934.

Mark Bolding, of Atlanta, Ga., for appellee and cross-appellant.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit by appellant, the Lane Drug Stores Incorporated, to enjoin Thos. C. Cox, appellee, from engaging in the drug business in a designated area in Atlanta, Ga., in violation of a contract entered into by him with appellant's predecessor, the Lane Drug Stores, Inc., a different corporation of practically the same name, the only difference being that the word "Incorporated" in appellant's designation is stated in full while with the other corporation it is abbreviated to "Inc." There was a decree enjoining Cox from using his own name in his business conducted in certain designated premises, but refusing further injunctive relief. The case comes up on appeal and cross-appeal.

There is no dispute as to the material facts. So far as necessary to state them, they are these:

For some time prior to March 12, 1928, Franklin & Cox, Inc., a corporation, was operating a drug store in Atlanta at the corner of Whitehall and Alabama streets. The business included the filling of prescriptions, the sale of drugs, the operation of a soda fountain and a luncheonette and the sale of candies, cigars, and other tobacco products, toilet articles, etc. Practically every drug store in Atlanta operated the same kind of business. Thomas C. Cox, C. W. Miner, and W. N. Carter, together with three others, owned all the stock of this corporation, of which 340 shares were outstanding. All of the three above named are registered pharmacists. Cox had been engaged in the drug business in Atlanta for a number of years, and was well and favorably known as a reliable druggist. He was president of the corporation and general manager of the business. Miner and Carter were employed therein as pharmacists. The three other stockholders were practicing physicians, and took no active part in the management. A corporation known as the Lane Drug Stores, Inc., was organized for the purpose of acquiring and operating a chain of drug stores in Atlanta. Exercising an option granted on March 12, 1928, this corporation purchased all the stock of Franklin & Cox, Inc., from its stockholders, for a total of $118,746.79, and acquired the business in its entirety. The above-stated price may be considered as paid only for the good will of the business, as the

physical assets worth $29,000 were otherwise paid for under the agreement. Of the amount paid for the stock, Cox received $59,722.69. A condition of the agreement of purchase was that Cox and the other stockholders, except Miner and Carter, each agreed that he would not re-enter or engage in the wholesale or retail drug business either directly or indirectly, as an individual, member of a firm, or officer of a corporation, within ten miles of the then location of the Franklin & Cox, Inc., store, for a period of twenty years, from the date of the consummation of the agreement, except upon the consent in writing of the Lane Drug Stores, Inc. After the sale of his business, Cox was employed by the purchaser for about two years, and then acquired one of its stores, located at Highland and St. Charles avenues in Atlanta. A corporation was formed to operate this store. Cox and members of his family owned practically all the stock. However, Miner and Carter also owned some stock, the amount of which is not disclosed, and were employed in the business. On April 9, 1932, Cox leased space in a building forming a corner of Ellis and Peachtree streets in Atlanta, designated as No. 179 Peachtree street, and the north half of the adjoining store, designated as No. 177 Peachtree street, to be used for the sale of cigars, candies, etc., with a soda fountain and luncheonette. At the same time Miner and Carter, who had formed a partnership, leased the south half of No. 177, to be used for a drug store. The lessees by agreement divided the floor space of both stores in an irregular manner, but no partitions were erected, and the display cases of both were intermingled so that any one entering the store could receive the impression that it was one establishment. Signs on the outside of the stores indicated that Miner and Carter were druggists and that Cox sold candies, soda, and cigars. These signs were of the same general appearance. There was undisputed evidence tending to show that the owners of the building would not have leased separate stores, divided by partitions, to either Miner & Carter or Cox if they were to be operated separately as a drug store and candy, cigar store and luncheonette, as in their opinion the businesses, if separately conducted, could not be successful. The Lane Drug Stores, Inc., was adjudicated bankrupt on June 2, 1932. Later, all of its assets, including the contract with Cox, were sold and transferred to appellant, and it continued to operate a number of stores of the bankrupt in Atlanta. Neither Cox nor Miner and Carter had any financial interest in the business of the other. The establishment on the corner of Ellis and Peachtree streets is within one mile of the former location of Franklin & Cox, Inc. Appellant is operating several drug stores within a radius of a few blocks from it.

The validity of the contract is not challenged. See McAuliffe v. Vaughan, 135 Ga. 852, 70 S. E. 322, 33 L. R. A. (N. S.) 255, Ann. Cas. 1912A, 290. And it is not disputed that appellant has acquired all the rights of the bankrupt in the contract sued on. It is obvious that the parties to the contract considered the business of Franklin & Cox, although dealing in different commodities, in separate departments, simply as a typical drug store. Cf. Kern v. Wilson, 73 Iowa, 490, 35 N. W. 594. It is also obvious that the purpose of the contract was to prevent competition by Cox with the stores to be conducted by the Lane Drug Stores, Inc., doing the same kind of business as the one it had acquired, and not merely to restrain Cox from engaging in the retail or wholesale selling of only drugs. The agreement must be considered to be that Cox was not to re-engage directly or indirectly in the kind of business he had sold, for the good will of which he had received substantial consideration, or to lend himself to the furtherance of such a competitive business. There is no doubt that every effort was made to evade the provisions of the contract in establishing the new store at Peachtree and Ellis streets and yet hold out to the public and former customers that Cox and Miner and Carter were again in the drug business together. It would be natural for any former customers to pay no attention to the signs on the outside, and, seeing the three men who had been together in business for many years, apparently operating one establishment, to receive this impression. Cox was bound to comply with the spirit as well as the strict letter of his contract. Flaherty v. Libby, 108 Me. 377, 81 A. 166. While no legal partnership existed between Cox and Miner and Carter, each contributed to the earning of profits by the other, and, unless conducted ostensibly as one establishment, neither business could succeed. This was in the nature of a partnership. The active participation of all of them in conducting a business identical with that Cox had agreed not to engage in, in what was in effect one establishment, created the very competition the contract sought to prevent. The conclusion follows that Cox violated the terms of his contract by indirectly engaging

in the retail drug business, and appellant is entitled to complete injunctive relief as prayed for.

The judgment is reversed, so far as inconsistent with the above conclusion, and the case is remanded, with instructions to grant an injunction as prayed for, Cox to take nothing by his cross-appeal.